Thomas A. Farinella (TF-8309)
The Law Office of Thomas A. Farinella, P.C.
260 Madison Avenue
New York, New York 10016
(917) 319-8579
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X

**ADRIAN JULES,**                                    **CASE NO. 20-cv-10500**
                                                     **ECF CASE**
                                                     **COMPLAINT**

                          **PLAINTIFF,**             **JURY TRIAL**
                                                     **DEMANDED**

            - against -

**ANDRE TOMES BALAZS, ANDRE BALAZS**
**PROPERTIES, BALAZS INVESTORS LLC,**
**HOTELS A.B. LLC,**

                    **DEFENDANT(S).**
-------------------------------------------------------------------------X


        Plaintiff, ADRIAN JULES, by and through his attorney THOMAS A. FARINELLA,

ESQ., for his Complaint against ANDRE TOMES BALAZS, ANDRE BALAZS PROPERTIES,

BALAZS INVESTORS LLC, HOTELS A.B. LLC, alleges as follows:

                        **PRELIMINARY STATEMENT**

        1.      The Plaintiff, Adrian Jules, brings this action against ANDRE BALAZS, ANDRE

BALAZS PROPERTIES, BALAZS INVESTORS LLC, HOTELS A.B. LLC, (collectively, the

"Defendants") for violations of Title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. §

2000e).

        2.      Defendants hired Adrian Jules May 3, 2017 in the Guest Relations Department.

During his tenure at Hotels A.B. LLC, also known as "the Chateau Marmont" (hereinafter

"Chateau Marmont"), Adrian Jules received exemplary performance evaluations leading up to being named Employee of the Year in 2019 for his department. Despite Adrian Jules's many achievements, subjected him to race, color, religion, sex and national origin discrimination and retaliation. On March 19, 2020, after years of service to Chateau Marmont, et al., summarily terminated Adrian Jules citing it as a lay off due to the unforeseen circumstance of COVID-19, which had not impacted Los Angeles's hospitality industry at the time.

## JURISDICTION

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(4), in that this is a civil action between Plaintiff, domiciled in Florida, a foreign state as defined in 28 U.S.C. § 1603(a), and citizens of New York, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## VENUE

4.     Venue is proper in this district 28 U.S.C. § 1391(b)(1), in that, in that Defendant Andres Tomes Balazs resides in this district, and all Defendants reside or maintain their principal place of business in New York.

## CONDITIONS PRECEDENT

5.     On October 5, 2020, Adrian Jules timely filed charges of race, color, religion, sex, national origin discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC).

6.     On or about October 13, 2020, the EEOC issued Adrian Jules a Notice of Right to Sue. This Complaint has been filed within 90 days of receipt of that notice.  Adrian Jules has fully complied with all prerequisites to jurisdiction in this Court under Title VII.

7.      Contemporaneously with the filing of this Complaint, Adrian Jules has mailed a copy to the Department of Fair Employment and Housing, thereby satisfying the notice requirements of California's Government Code section 12960.

## PARTIES AND RELEVANT ACTORS

8.      Plaintiff Adrian Jules, domiciled in Florida (herein "Plaintiff") is an Actor, Writer, Producer, and former full-time Chateau Marmont Employee.

9.      Upon information and belief, the Defendant Andre Tomes Balazs (herein "Defendant Balazs"), is President and Chief Executive Officer of André Balazs Properties, a portfolio of hotels across the United States and residences in New York, that includes but is not limited to Chateau Marmont Inc, Chateau Holdings LTD, Chateau Properties Holdings LLC, Andre Balazs Properties, Balazs Investors LLC, Hotels A.B. LLC, et al and conducts business and resides in New York.

10.     Upon information and belief, Hotels A.B., LLC, is a limited liability company formed under the laws of New York and does business in New York.

11.     Upon information and belief, Andre Balazs Properties is a corporation that is incorporated in New York and has its principal place of business in New York.

12.     Upon information and belief, Balazs Investors, LLC, is a limited liability company formed under the laws of New York and does business in New York.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

13.     Plaintiff, a terminated employee of Chateau Marmont effective March 19, 2020, began employment in the Guest Relations Department May 3, 2017 with the professional obligation to "protect the people and property" of Chateau Marmont.

14.      Magdalene Vick ("Vick") was a hostess at Chateau Marmont and peer to Plaintiff.

15.     October 4th, 2019 Plaintiff was approached by a belligerent Vick with a request to be driven to her vehicle after her work shift.

16.     The request was not within the scope of Plaintiff's work responsibilities and/or work agreement and was also a matter of liability considering Plaintiff was still at work and Vick was not.

17.     Chateau Marmont, at the time of the incident, had a "Parking Policy" that employees must agree to as a term of employment that detailed designated parking areas, best practices, and protocol for employee parking.

18.     The policy did not state employees were responsible for assuming the risk associated with escorting personnel to their vehicles during work hours and did not indicate they were responsible for employee transportation to and from the premises.

19.     Plaintiff, despite Vick's request being outside of the scope of Plaintiff's work responsibility, agreed to escort her to her vehicle and explained there would be a wait because he was working and could not leave his female counterpart, Chateau Hostess Katrina Spencer alone due to safety.

20.     Upon confirmation that Plaintiff would not accommodate her immediately, Vick's belligerence transitioned to hostility and took form as verbal threats, insults, harassment, slander and defamation among guests, peers, supervisors, and Management.

21.     Plaintiff endured bullying, harassment, and verbal threats from Vick during the remainder of his shift and became especially triggered after receiving sexually explicit text communications and harassment from Vick after her departure.

22.     Plaintiff followed up with his Direct Supervisor, Roelle citing discomfort from the overall experience and more specifically from the sexually explicit messages, threats, and harassment that followed.

23.     Plaintiff learned Roelle was copied on the sexually explicit communications sent to Plaintiff from Vick and Restaurant Manager, Pollecut.

24.     Roelle advised Plaintiff he would forward his grievance to Management to ensure Vick received disciplinary action because her behavior violated Chateau Marmont's Employee Code of Conduct, Workplace Harassment Policy, and her unwarranted threats against Plaintiff aimed to create a hostile work environment.

25.     October 4th, 2019 Plaintiff followed the reporting policy indicated in Chateau Marmont's Code of Conduct and filed an Incident Report to detail his negative experience with Vick and protect himself as a result of her threats "he'd be sorry" and "would pay" for his failure to escort her to her vehicle despite it not being within the scope of his work responsibility.

26.     Plaintiff submitted the Incident Report via email and followed up with his immediate Supervisor Shane Roelle ("Roelle") to no avail and subsequently escalated the matter to Dennis Severse ("Severse"), the Department Manager, who indicated he would forward the report to Upper-Level Management.

27.     Plaintiff presumed Severse would forward the incident report and grievance to Upper-Level Management:  Amanda Grandinetti "Grandinetti"), Carly Skinner ("Skinner"), Brenden Pollecut ("Pollecut"), and Molly Kelley ("Kelly").

28.     Plaintiff continued his normal work schedule and was subjected to further harassment by Vick who publicly accused him of bullying and spread the false accusation amongst Chateau Marmont Personnel, Guests, and Management.

29.     Plaintiff was met with undue hostility, rumors, and speculation from work peers as a result of Vick's false statements and promotion of alternate facts.

30.     Plaintiff, while under immense stress from the continued battery and bullying stemming from Vick, received subsequent text communications from Vick and endured further harassment and antagonizing from her at work despite her publicly vilifying Plaintiff as a bully.

31.     Plaintiff, as a result of being falsely and wrongly accused, avoided Vick's advances, and contacted Management to intervene and remedy the situation.

32.     Plaintiff's communications to Management regarding unwarranted mistreatment from Vick and the subsequent incident report received no response.

33.     Plaintiff learned Vick was given a parking spot in Chateau Marmont's Parking Lot by Management following the incident versus being reprimanded for violating workplace policies.

34.     October 9th, 2019 Plaintiff escalated his Incident Report Filing by sending it directly to Annelise Newman ("Newman"), Chateau Marmont's Human Resources Coordinator, by email to ensure she was in receipt of the documents and made aware of his grievance because he had not received any follow-up.

35.     Plaintiff received no confirmation of receipt or acknowledgement from Newman despite her being the only Human Resources Personnel at Chateau Marmont.

36.     It was also at this time that Plaintiff realized Newman was moonlighting as Executive Assistant for Management and also as Human Resources Coordinator, designations that appeared to be a conflict of interest.

37.     October 10th, 2019 Plaintiff confirmed bullying allegations circulated by Vick were more than hearsay and had escalated to Management in a chance encounter with

Grandinetti who casually informed Plaintiff and Roelle, while exiting an Uber, that Vick accused him of bullying.

38.     Grandinetti stated she was, "looking into the matter" while failing to acknowledge Plaintiff's grievance and/or numerous communications regarding it.

39.     Plaintiff and Roelle expressed discomfort with Vick, refuted her bullying claim, and requested Grandinetti to ensure they did not have to work alongside Vick given her inappropriate behavior, false statements, accusations, and intention to tarnish their personal and professional images among staff and guests.

40.     Plaintiff mustered the courage to ask Grandinetti about his email communications regarding his grievance with Vick and was told she was not in receipt of the communications and lacked any knowledge regarding the subject matter.

41.     Plaintiff became alarmed and forwarded the email communications to Grandinetti.

42.     Plaintiff suffered considerable stress learning Management was "looking into" Vick's allegations while ignoring his grievance citing the same incident. The thought of him, a Black Man, being falsely accused by Vick, a White Woman, terrified him.

43.     Plaintiff was forced to work in a hostile work environment and subjected to further agitation from Vick who continued to be scheduled during his work shifts despite Plaintiff's communications to Management requesting otherwise.

44.     October 11th, 2019 Plaintiff was approached by Vick, during work, and indicated he did not feel comfortable speaking to her after being falsely accused of bullying.

45.     Vick stormed away like she was victimized, and Plaintiff treated her poorly.

46.     Plaintiff, fearing Vick might embellish the truth again, immediately communicated the details of the encounter to Management Personnel Roelle and Severse.

47.     October 12th, 2019 Plaintiff initiated further communications with Management to follow-up regarding his grievance with Vick by sending all related materials via email to Management Grandinetti and Skinner.

48.     Later the same evening Plaintiff received text communications from Vick whom at this point was intentionally harassing him, the same individual falsely accused of workplace bullying.

49.     Plaintiff communicated to Roelle and Severse that Vick was harassing him with text and in-person communications, and he was experiencing discomfort.  However, no actions were taken to remedy Plaintiff and/or investigate.

50.     October 16th, 2019 Plaintiff reached out to a therapist to make an appointment as a result of enduring unwarranted emotional distress at Chateau Marmont.

51.      October 17th, 2019 Plaintiff was ambushed with a meeting request by Management whom up until this point had not responded to multiple emails from him regarding his grievance with Vick or the incident report.

52.     Plaintiff had no idea why he was meeting with Management but obliged and met them inside of a hotel room on the second floor as requested.

53.     Plaintiff experienced anxiety upon entering the room at the sight of Vick, Severse, Grandinetti, and Kelley already in attendance.

54.     Plaintiff expressed discomfort to Management who ignored him. Given their preoccupation with ignoring him and holding his safety and well-being in total disregard Plaintiff

feeling threatened recorded the meeting to ensure no alternate facts or misinformation to further harm him was communicated.

55.     Roelle entered the room as Grandinetti gave a speech about workplace bullying to Plaintiff and proceeded to give the floor to Vick.

56.     Vick cited her grievances from October 5th, 2019 with Plaintiff and Roelle. The incident where she verbally abused and assaulted Plaintiff with witnesses but falsely reported as bullying from Plaintiff.

57.     Vick directed unwarranted frustrations and illegitimate claims at Plaintiff and Roelle.

58.     Plaintiff and Roelle became alarmed by the egregiousness of Grandinetti to provide a platform for Vick to further harass, vilify, bully, and embellish the truth while at the same time ignoring their rights as employees and mistreatment by Vick.

59.     Roelle expressed discomfort regarding Vicks recital of facts regarding the incident and confirmed Vick did not subject him to the verbal assault and abuse she unleashed on Plaintiff, the only male who actually agreed to escort her to her vehicle, and instead silently walked away when he refused.

60.     Everyone in attendance became alarmed by Roelle's accusation that Vick was not aggressive with him and looked to Vick for a response.

61.     Vick could not cite why she selected to be aggressive with Plaintiff versus Roelle but confirmed Plaintiff was the victim of undue and unwarranted verbal abuse, hostility, and an attack from her that escalated as time persisted.

62.     Plaintiff felt obliged to speak up given it was the only opportunity he had been given to do so but was incredibly uncomfortable given Vick's assault of his character, bullying, and the rapacious and accusatory nature of the sexually explicit communications she sent to him.

63.     Vick had prior knowledge of Plaintiff's sensitivity regarding the topic of rape due to him being a by-product of it. Please find communications from Vick to

64.     Plaintiff had been uneasy since the arrival of Vick's suggestive sexually explicit text communications and their accusatory undertone of rape. However, he was forced to disclose the very intimate details of his experience with rape to attendees to further demonstrate why Vick's communications to him were problematic, caused significant stress, and were a workplace violation.

65.     Plaintiff became emotional expressing discomfort Vick's false claims caused him and questioned why she singled him out and subjected him to bullying and lied on him versus the colleagues who refused to assist her.

66.     Vick could not cite why she chose to verbally assault and abuse Plaintiff versus Roelle and acknowledged knowing how sensitive Plaintiff was to the topic of rape but chose to send him sexually explicit accusatory communications anyway.

67.     Plaintiff became embarrassed as Severse, Roelle, and Grandinetti apologized regarding the mental anguish and suffering he endured as a result of Vick.

68.     Vick confirmed she was hostile, aggressive, and abusive to Plaintiff and once again stated she did not know why she exhibited the behavior.

69.     Vick sobbed like she was the victim after confirming she abused Plaintiff.

70.    Grandinetti became alarmed by Vick's admission of guilt and stated Vick never disclosed the full details of the encounter with Plaintiff or her mistreatment of him in their meetings following the incident.

71.    Plaintiff became further troubled after learning s Vick and Grandinetti had multiple meetings regarding the incident to address Vick's Allegations.

72.    Plaintiff had yet to receive a response from Management from multiple emails addressing the incident and was not privy to follow-up meetings and/or an investigation to address his allegations against Vick.

73.    Instead, Vick was championed by Management as the victim, was rewarded a parking spot, given meetings to address her concerns, and given a platform to confront Plaintiff and others wrongfully and falsely accused of bullying by her the actual bully.

74.    Grandinetti became so alarmed by Vick's admission of guilt that she abruptly adjourned the meeting telling Plaintiff she would look to him for direction on how to discipline Vick.

75.    Plaintiff became even more alarmed and anxious as Management once again failed him by choosing to defer the responsibility of employee discipline to him versus following the protocol and procedures for disciplinary action already in place and stipulated by the Employee Handbook.

76.    Plaintiff continued to work scheduled shifts and attempted to keep a reasonable distance from Vick whom Management failed to discipline despite her workplace violations and clear abandon of Chateau Marmont's Employee Code of Conduct.

77.    Plaintiff began therapy to address trauma and stress.

78.     October 26th, 2019 Plaintiff furnished a physician's note to Grandinetti, the Manager on Duty, upon being tardy to work.

79.     Within hours of receiving the physician's note Grandinetti followed up with Plaintiff for the first time regarding his grievance with Vick via email.

80.     In it, Grandinetti deferred responsibility to Plaintiff regarding discipline for Vick.

81.     October 27th, 2019 Plaintiff worked his regularly scheduled shift and had an encounter with Vick as a guest of Chateau Marmont, an employee benefit that must be preapproved by Management.

82.     Thus, Management made no effort to remedy Plaintiff of interactions with Vick or to remedy the ongoing grievance.

83.     October 29th, 2019 Skinner followed up with Plaintiff via email regarding his grievance with Vick (for the first time) stating Management was awaiting his direction regarding how to handle Vick.  Grandinetti was copied on the email.

84.     October 30th, 2019 Plaintiff responded to the email from Skinner (and replied all) reaffirming his stress and frustration with being falsely accused of bullying and grief the follow-up from Management on Vick's behalf caused him.

85.     Plaintiff also expressed frustration regarding being accused of bullying while enduring bullying and being ignored by Management regarding his mounting grievances with Vick.

86.     October 31st, 2019 Skinner replied to Plaintiff's response stating he was not accused of bullying despite his firsthand experience of being accused of it by Grandinetti on October 10th, 2019 as she exited an Uber and again on October 17th at the meeting where he was ambushed.

87.     Skinner replied discrediting Plaintiff's belief that he was accused of bullying and attempted to change the narrative of his experience by discounting it and reinventing a version of what took place preceding the ambush meeting and during it.

88.     Skinner replied, "The meeting was not called because you were "in trouble. Neither Maggie nor anyone else has accused you of being a bully. The meeting was called as a result of both yourself and Shane approaching Amanda regarding Maggie's behavior and the two of you not wanting to walk her to her car."

89.     Given Plaintiff's mounting track record of untrustworthy behaviors and breaches of trust from Skinner he was afraid she and/or Management might reinvent the narrative of the ambush meeting and attempt to act as if it was not conducted with an accusatory tone to serve as a sounding board for Vick to confront Plaintiff and express her unwarranted grievances.

90.     As a result, Plaintiff recorded the ambush meeting to protect his best interest in case he ended up in the position he is currently in today.

91.     Skinner also sent Plaintiff a Workers Compensation form indicating she completed the employer's portion of the form just in case Plaintiff desired to move forward with filing a claim.

92.     Plaintiff found the attachment of the Workers Compensation Forms troubling considering they arrived after his submission of a physician's note along with first time follow-up from Management regarding his grievance from three weeks prior.

93.     Prior to these communications Plaintiff had not received any follow-up or acknowledgement from Upper-Level Management regarding his grievance, but they were now deferring the responsibility of disciplining Vick to him.

94.     October 31st, 2019 Plaintiff experienced shortness of breath and anxiety during his shift and requested to leave early.  Severse approved the request.

95.     November 1st, 2019 Plaintiff attended therapy and engaged in text communications with Severse who approved an additional off day for Plaintiff.

96.     Plaintiff received unsolicited text communications from Vick during therapy that further agitated him.

97.     Plaintiff contacted Severse to request additional time off due to angst from communications from Vick.

98.     The next day, November 2nd, 2019, Plaintiff took approved time off from work.

99.     November 3rd, 2019 Plaintiff returned to work for his regularly scheduled shift.

100.    November 15th, 2019 Plaintiff attended therapy.

101.    November 21st, 2019 Plaintiff worked his regularly scheduled shift and was informed by Roelle that Vick had another workplace violation that violated the employee code of conduct, but this time with a well-known Chateau Marmont Guest.

102.    According to Roelle, Vick denied Actress Calie Cohen restaurant entry citing her as sexually promiscuous.

103.    Calie Cohen was listed in Chateau Marmont's Restaurant Guest Book as a regular guest of Severse and had been for some time prior to this incident.

104.    On the evening of the incident, Vick was approached by Roelle, a Supervisor, after denying Calie Cohen entry and stated she was a "whore that sleeps around" and hung up the phone.

105.    Calie Cohen's long time guest profile was also mysteriously deleted from the system.

106.    Roelle communicated the issue to Severse due to his knowledge that Calie Cohen was cited in the system as a frequent guest and friend of Severse.

107.    Severse brought it to the attention of Restaurant Manager Carmine Bucchetti who escalated the matter to Skinner.

108.    No actions were taken to discipline Vick for her discriminatory behavior towards Calie Cohen and Roelle, a Supervisor, was instead directed by Management to seek permission from Vick, his subordinate, regarding Guest Admission to the Restaurant.

109.    Roelle spoke to Skinner because he was alarmed by the directive and shared the details of Vick's misconduct and Skinner dismissively replied the incident sounded like high school drama as if no workplace violations had taken place.

110.    Roelle communicated that Vick erased Calie Cohen's Guest Profile and Skinner took no actions to investigate.

111.    Roelle then communicated to Plaintiff that Vick was untouchable, and no actions would ever be taken for her wrongdoings by Management.

112.    November 21st, 2019 Plaintiff was informed by Severse that s Skinner and Grandinetti planned to meet with him regarding the physician's note he submitted to excuse time off from work because Chateau Marmont allegedly had something going on with their insurer in terms of a policy change and needed Plaintiff to sign documents.

113.    Severse communicated to Plaintiff that he was uncertain about specifics because what was disclosed to him was vague but confirmed there was an expectation for Plaintiff to meet with s Skinner and Grandinetti regarding his physician's note.

114.    Plaintiff expressed worry because his work performance was not compromised as a result of the time off request and he furnished a physician's note to substantiate the absences despite it not being necessary as stipulated in the Employee Handbook.

115.    Plaintiff did not take off more than seventy-two hours consecutively and thus was not required to furnish a physician's note but did.

116.    Plaintiff endured anxiety awaiting the meeting, but nothing transpired for weeks.

117.    November 22nd, 2019 Plaintiff worked his regularly scheduled shift and was informed the meeting was rescheduled to November 25th, 2019 by Severse.

118.    November 25th Plaintiff worked his regularly scheduled shift, and no meeting took place and/or communications from s Grandinetti and Skinner whom Severse indicated exclusively organized the meeting.

119.    November 28th, 2019 Plaintiff worked his regularly scheduled shift and was asked by Severse if the meeting took place.

120.    Plaintiff responded no and Severse indicated he was uncertain why Grandinetti and Skinner were requesting the meeting in the first place because they had never conducted a similar meeting with any other Chateau Marmont Employee regarding the subject matter and he had yet to see the new insurance policy and or request he was told warranted the meeting.

121.    Severse also stated he was not in agreement with s Skinner and Grandinetti's desire to have the meeting, considered it intrusive, and did not believe their actions aligned with professional standards.

122.    Plaintiff was being subjected to treatment outside of Management's normal protocol.

123.     Severse apologized to Plaintiff for his inability to rectify the incident with Vick and informed him that he did everything within his power to address the workplace violations with Grandinetti, Skinner, and Pollecut to no avail.

124.     Severse, like Roelle, admitted there was nothing he could do to help alleviate Plaintiff. Everyone at Chateau Marmont was at the mercy of Grandinetti and Skinner who chose to overlook Vick's indiscretions even when she violated guests and managers.

125.     Plaintiff exited the conversation with Severse traumatized. There appeared to be a sisterhood at Chateau Marmont that was proving to be quite destructive: discriminatory, and retaliatory.

126.     December 1st, 2019 Plaintiff was approached by Skinner and requested to attend another ambush meeting where he was informed a Workers Compensation Claim was filed absent his consent and knowledge.

127.     Plaintiff was unaware the filing existed and requested details to determine what incident occurred to prompt it absent his knowledge and/or consent and learned the filing was linked to the incident with Vick.

128.     Management had taken the liberty of filing a Workers Compensation Claim that placed Plaintiff's mental health under question absent making any reference to the inciting incident with Vick that caused him stress and duress.

129.     Skinner was elusive with answering Plaintiff's questions regarding the filing because Plaintiff became visibly shaken by her admission that the filing was done an entire month prior on November 1st, 2019.

130.    Plaintiff worked all scheduled shifts during the month of November and did not miss any workdays and yet was not informed a Workers Compensation Claim and/or filing was initiated on his behalf. Plaintiff found the untimely disclosure problematic.

131.    Plaintiff asked Skinner to detail the incident reported in the filing and stated he did not authorize a filing and could not understand how a filing was done absent a legitimate incident because to his knowledge his work performance was above average and had not been impacted.

132.     Vick was the individual who exhibited alarming workplace behaviors that violated the Employee Code of Conduct, yet Plaintiff received no follow-up regarding the incident, the report, or numerous emails sent to Management regarding it.

133.    Meanwhile Management was aware of the incident and worked diligently to assist and accommodate Vick, the agitator, and failed to take disciplinary action against her even after confirming she violated workplace policies.

134.    Plaintiff became further distressed as Skinner explained he needed to have a mental evaluation conducted by Chateau Marmont Physicians to certify he could return to work and was okay to perform work related duties.

135.    Plaintiff was confused because no incident took place at work to substantiate the request and his work performance was stellar.

136.    Further, Plaintiff had not missed any additional days of work to substantiate the idea that a leave or excessive absences had taken place and no Family Medical Leave Act documents and/or accommodations were ever extended to Plaintiff.

137.    Skinner came off incredibly insincere, calculated, and retaliatory to Plaintiff. Instead of addressing Plaintiff's grievance with Vick Management chose to fabricate a story about Plaintiff to suggest he was an agitator in the workplace.

138.    Plaintiff realized he was being bullied by Management and subjected to treatment and requests that were not customary practices at Chateau Marmont with other employees.

139.    Plaintiff asked Skinner for the Workers Compensation File and communicated there was no inciting incident to warrant a Workers Compensation Filing because he did not meet the minimum requirements to file in terms of absences and having a work-related incident.

140.    Plaintiff also questioned Skinner why the filing was done upon his submission of a medical note to excuse an absence given it was not submitted for that purpose.

141.    Plaintiff expressed to Skinner that his privacy had been violated by Chateau Marmont using his physician's note to excuse an absence as rationale and/or an inciting incident to file a Workers Compensation Claim.

142.    Plaintiff indicated the filing was a significant breach of trust.

143.    Skinner assured Plaintiff the Workers Compensation Claim would be closed and was not something he needed to worry about.

144.    Plaintiff stated he was not worried but confused why Management arbitrarily filed an insurance claim absent his knowledge and/or consent and failed to inform him for an entire month.

145.    There were several opportunities for Management to inform Plaintiff regarding the filing over the course of November 2019, yet no one communicated a filing had taken place for thirty-one days.

146.    Skinner had no rebuttal as to why she and/or Grandinetti failed to meet with Plaintiff regarding his grievances and/or their decision to violate his privacy by using his physician's note to file a Workers Compensation Claim absent his consent and/or knowledge.

147.    Plaintiff never requested for a Workers Compensation Claim to be filed and also did not complete the documents when Skinner sent them to him via email in October after his physician's note submission.

148.    Plaintiff exited the meeting disheveled, stressed, and having difficulty breathing. He was aware his rights had been violated on many fronts and could not believe the audacity of Skinner and her co-conspirators.

149.    Plaintiff spoke to Severse and learned he knew nothing about the filing despite him being Plaintiff's Manager.

150.    Plaintiff, considerably alarmed, decided to reach out to Workers Compensation to request a copy of the filing.

151.    December 2nd, 2019 Plaintiff contacted Sompo International, Chateau Marmont's Insurer, and spoke to Elyana Nadres a Sr. Resolution Manager in their Global Risk Solutions Adjusting Unit regarding the unauthorized Workers Compensation Claim.

152.    Elyana confirmed the Workers Compensation Claim Number and indicated Skinner requested for it to be closed.

153.    Plaintiff communicated he was not aware the claim was filed in the first place, requested a copy of the filing, and for the file to remain open given it was in his name and he had just been made aware of its existence.

154.    Elyana expressed shock upon learning Plaintiff did not initiate the filing and expressed that he needed to submit documents they previously requested to no avail.

155.    Plaintiff informed Elyana that he did not file the claim and was none the wiser document requests were made and questioned who they were made to given he was unaware the claim existed.

156.    Elyana assured Plaintiff she would send the documents and related requests electronically and via mail, provided her contact information for email and/or further telephone communications, and said she would be in touch.

157.    Elyana also stated she was escalating the matter to Management because Chateau Marmont provided medical records to initiate the claim and violated his privacy if he did not consent and/or have knowledge of the filing and disclosure of his medical records.

158.    Plaintiff exited the call confident he would be able to get to the bottom of determining all parties involved in filing the fraudulent Workers Compensation Claim.

159.    At this point Plaintiff was also concerned that payments might have been issued to someone given the Claim was communicated as approved by Skinner.

160.    Plaintiff followed up with Elyana after a few days of not receiving any communications or the requested records via email, left voicemail messages, and also spoke to another Claims Adjustor who indicated she was out of the office.

161.    December 6th, 2019 Plaintiff followed up with Chateau Marmont Managers Severse, Grandinetti, Skinner, and Human Resources Coordinator/Executive Assistant Newman to request the Workers Compensation File for the unauthorized filing.

162.    Plaintiff via email informed the above-mentioned parties about his meeting with Skinner and upset regarding learning about the unauthorized Workers Compensation Claim filing, his lack of knowledge regarding the alleged manufactured incident that incited the filing,

and overall discontent with not being informed about the filing for over thirty-one days despite him often being at work during the time period.

163.     Plaintiff also detailed how the filing was a significant breach of trust, violated his privacy, OSHA, and was insurance fraud given he had no knowledge of the filing, did not request a filing for a work-related injury, and/or discuss it with Management.

164.     Newman, who historically and evidentiary never responded to Plaintiff, finally replied to this communication by stating Chateau Marmont had a professional responsibility to file the claim to avoid potential future liability.

165.     Newman spoke regarding the claim as if it were not filed and as if the power of filing were deferred to Plaintiff but the issue at hand was that the claim was already filed and Plaintiff's medical records were given to Sompo International, the insurer, by someone at Chateau Marmont absent Plaintiff's consent, informed or otherwise.

166.     Newman spoke dismissively in her rebuttal, refused to address numerous issues raised by Plaintiff and instead advised no further actions were needed by Plaintiff if he did not desire to move forward with the claim.

167.     This triggered Plaintiff tremendously considering Skinner had been in touch with the insurer to ensure he was not given filing documents that violated his rights and now Newman her Protégé/Assistant/Human Resources Coordinator whom lacked adequate experience, qualification, and professionalism, per Plaintiff's knowledge and experience with her, was now attempting to diminish the value of the gross misconduct and lack of professional integrity of Management Personnel involved in filing the claim.

168.     Newman ended communications stating Grandinetti was out of the office for a week, however someone would address Plaintiff's concerns at a later date.

169.    Plaintiff, once again, was not given proper follow-up and or consideration that was extended to other employees and was certainly not given the attention and concern given to Vick.

170.    Plaintiff suffered difficulty breathing and nearly stroked upon realizing Newman sent a copy of the filing Chateau Marmont Management submitted to Sompo International to initiate the claim.

171.    According to the filed documents, sent to Plaintiff by Newman, the claim was filed November 14th and cited an incident November 1st, 2019, a date when Plaintiff was not at work.  This untruthful disclosure served as a further point of stress for Plaintiff who read the packet in alarm.

172.    California Workers Compensation Law provides the requirement for employers to provide a copy of completed claim forms to employees within one day of filing; however, Plaintiff did not receive any information regarding the filing until thirty-one days later.

173.    Plaintiff did not receive a copy of the filed documents until nine days after the initial thirty-one days and the file hesitantly arrived after significant requests and follow-up from Plaintiff to Chateau Marmont Management and Human Resources Coordinator.

174.    The filing detailed the incident as taking place at Chateau Marmont, having no witnesses, and was allegedly reported by Severse to Newman. This troubled Plaintiff given he was not at work on the date of the alleged fabricated incident.

175.    Therefore, no incident could have taken place on the property. The only thing that took place on the alleged date was Plaintiff requested time off of work, which should not have prompted Management to file a retaliatory Workers Compensation Claim.

176.    Management's filing diagnosed Plaintiff as having "acute stress disorder from work related activity" and included an enclosure of the Physician's note Plaintiff submitted November 1st, 2019 to excuse his absence.

177.    Plaintiff's Physician's note, Chateau Marmont was not legally authorized to disclose to Sompo International absent Plaintiff's informed consent, listed Plaintiff's condition as "acute stress disorder".

178.    Nevertheless, Management at Chateau Marmont had taken the liberty of diagnosing Plaintiff and embellished an insurance claim with said diagnosis to substantiate a false narrative they concocted to suggest he was problematic, had a mental health disorder and/or issues, and yielded an unsatisfactory work performance that per Plaintiff's meeting with Skinner desired a mental health evaluation to determine his fitness to continue his employment at Chateau Marmont.

179.    Management's disclosure of Plaintiff's Physician's note to file the unauthorized Workers Compensation Filing violated California Civil Code Law 56.20 (c) that states, "No employer shall use, disclose, or knowingly permit its employees or agents to use or disclose medical information which the employer possesses pertaining to its employees without the patient having first signed an authorization under Section 56.11 or Section 56.21 permitting such use or disclosure.

180.    Plaintiff's medical diagnosis fell within the parameters of disabilities covered by ADA a Civil Rights Law that prohibits discrimination based on disability.

181.    Plaintiff's Physician's note confirmed a diagnosis from a competent medical professional so his disclosure to Management and utilization of the note to excuse his absence was therefore covered.

182.    Thus, upon receipt of Plaintiff's Physician's note, Management should have maintained the document with confidentiality and awaited a potential request from Plaintiff for a reasonable accommodation if desired.

183.    However, Plaintiff was not afforded the protection of ADA because Management diagnosed him despite lacking the professional qualifications, competency, and authority to do so and initiated a Workers Compensation Claim based on their diagnosis.

184.    A written misrepresentation regarding Plaintiff was made by Management in their filing that was untrue and constitutes fraud.

185.    Management attributed a false diagnosis to Plaintiff for the purpose of opening an unwarranted and unrequested claim. This was a significant breach of trust that violated Plaintiff's privacy, human rights, and the law as a form of insurance fraud.

186.    The False and Fraudulent Claims Act applies to several types of insurance compensation. When a fraudulent claim, or fraudulent evidence, is used to initiate an insurance claim it is a violation of this law.

187.    Management's unlawful filing and breach of trust prompted Plaintiff to seek legal representation because it became quite clear they did not have his best at heart and were invested in ruining Plaintiff's credibility despite him being a stellar employee.

188.    December 9th, 2019 Plaintiff finally received the promised follow-up from Elyana from Sompo International via email: A Welcome Packet.

189.    Plaintiff opened the file, and the mailing label indicated his address as unknown. This explained why he was not in receipt of filed materials but was odd considering Chateau Marmont had Plaintiff's address on file and previous mail from Workers Compensation regarding a true workplace injury made it to Plaintiff's home address without delay.

190.    Plaintiff became further distressed upon realizing the welcome letter was dated November 18th, 2019 and alarmed when he realized none of the documents were completed.

191.    Elyana from Sompo International whom promised to remit the completed file application to Plaintiff sent an entirely new packet containing forty incomplete pages for the "preexisting claim".

192.    Plaintiff became agitated that a document different from what was used to file the claim was sent by Sompo International. As the person who the claim belonged to Plaintiff was entitled to have a copy of the filing documents and felt further violated from the Insurer.

193.    Plaintiff immediately contacted Severse to inquire why he was not informed regarding the Workers Compensation Claim filing since Severse was listed in the filing documents.

194.    Severse, who was out of the office on vacation, responded in alarm saying he was not aware of the filing, did not consent or participate.

195.    Plaintiff subsequently requested a copy of Chateau Marmont's HIPAA Log via email from Newman, obtained Counsel, and informed management that he had representation given they made no efforts to address multiple grievances.

196.    Plaintiff received the document from Newman after multiple follow-up emails and confirmed the incident they concocted was logged in violation of OSHA.

197.    OSHA Code 1904.5(b)(2)(ix) stipulates employers are not required to record mental illness unless "The illness is a mental illness. Mental illness will not be considered work-related unless the employee voluntarily provides the employer with an opinion from a physician or other licensed health care professional with appropriate training and experience (psychiatrist,

psychologist, psychiatric nurse practitioner, etc.) stating that the employee has a mental illness that is work-related."

198.    Plaintiff's Physician's note did not express the diagnosis of "work related" as OSHA stipulates. However, Management provided Workers Compensation with the classification absent the qualification to do so, thus confirming the filing was fraudulent and deceptive.

199.    Plaintiff upon learning of the unlawful filing and requesting documents from Management suffered retaliation.

200.    Plaintiff's vacation that was preapproved by Severse suddenly became under scrutiny by Skinner who advised Severse to penalize Plaintiff for requesting to take his vacation during a black out period.

201.    This directive was retaliatory because other Chateau Marmont Employees were on vacation at the time and others were granted approval for vacation during the exact time the Plaintiff's prior approval was being rescinded.

202.    Severse communicated the directive to Plaintiff and Plaintiff cancelled his vacation plans to visit his sick mother in Florida to ensure his employee record remained blemish free and was tainted by a write up and escalation of termination for absence during what had become an arbitrary black out period for certain employees.

203.    Plaintiff remained in Los Angeles to work his regularly scheduled shifts and communicated he would not be taking his vacation with advance notice.

204.    However, the shifts were already covered so Plaintiff did not work despite having forfeited going on vacation as planned and was forced to use vacation time to make up for the hours that would be missed during the pay period.

205.    Plaintiff also came under scrutiny after submitting payroll hours after working a private event at Chateau Marmont and it was also a form of retaliation.

206.    Severse contacted Plaintiff regarding a wage indicated on a work date that was higher than Plaintiff's hourly rate stating Skinner brought it to his attention that Plaintiff fraudulently completed his payroll report.

207.    However, Severse confirmed that Plaintiff was not in violation of policy and had not embellished his payroll report because Plaintiff had followed the exact protocol in place for employees that work private events at Chateau Marmont.

208.    In fact, Plaintiff worked private events at Chateau Marmont for three years and reported the exact catering wage under scrutiny and received payment absent any conversation, push back, or questioning.

209.    Severse apologized to Plaintiff for the misunderstanding and closed the inquiry.

210.    Plaintiff was not in violation of any policy and was instead being further bullied by Management and subjected to retaliation.

211.    December 2019 Plaintiff was recognized at Chateau Marmont's Annual Holiday Party as Employee of the Year for the Guest Relations Department and was awarded an Amazon Gift Card and Greeting Card with a handwritten note from Management.

212.    January 17th, 2020 Counsel representing Plaintiff reached out to Chateau Marmont to mediate Plaintiff's numerous workplace grievances that remained outstanding.

213.    A week later Chateau Marmont's Counsel rebutted Plaintiff's Claims with revisionist history cited from Management that included egregious claims and outright lies regarding the series of events leading up to Plaintiff retaining counsel.

214.    Plaintiff's Counsel replied to Ms. Weber, Chateau Marmont's Counsel, and never received any further communications and or responses.

215.    March 19th, 2010 Plaintiff received an email from Grandinetti titled "Notice to Impacted Employees" that stated "This letter is therefore official notice, as required by the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2102(a)), the California Labor Code § 1400 *et seq.*, (collectively, the "WARN Act"), and the March 18, 2020 Executive Order N-31-20 of California Governor Gavin Newsom, that you have been laid-off.  The expected date of your termination is March 20, 2020."

216.    Plaintiff learned more than two hundred employees were impacted by unexpected termination from Chateau Marmont, a location frequented by Hollywood A-Listers that was anything but compromised by the ensuing threat of a pandemic.

217.    Chateau Marmont prematurely laid off personnel with immediate cancellation of their insurance and benefits citing financial troubles yet occupancy was not threatened at the time, the stay-at-home order was not in place nationally, and pandemic was not yet a local threat to businesses.

218.    Long time Chateau Marmont Staff, prior to this abrupt action, took steps to unionize as an effort to secure adequate compensation and benefits commensurate with the living wage and cost of living in Los Angeles, a city nationally ranked as one of the most expensive places to live in the United States.

219.    It is their belief that the layoff/termination happened as a retaliatory action to stifle their organization efforts and the pandemic served as the best-case scenario to serve as probable rationale.

220. Celebrities and A-Listers continued to frequent the location cited as having a skeleton staff despite the national stay at home order being place. Thus, the business was not as adversely impacted as leadership at the business suggested.

221. Disgruntled and poorly treated former employees began to speak out via interviews to express discontent with the former employer resulting in widespread claims of professional blunders, improprieties, racial discrimination, sexual misconduct, and more from leadership at Chateau Marmont including Defendant Balazs the owner.

222. Chateau Marmont created an online fundraiser for former employees as a response to national criticism. This effort came under scrutiny from employees who viewed the action as insincere and egregious considering the known high net worth of Defendant Balazs, the world-renowned hotelier and owner of Chateau Marmont and their mistreatment from Management during their respective tenures at the business.

223. To date more than thirty former employees have come forward to express their horrific experiences at Chateau Marmont with credible news media. Their allegations detail concrete examples of the same prejudice, racism, disregard, discrimination, harassment, bullying, and retaliation Plaintiff endured.

224. Today most of the employees named in this action are no longer employed at Chateau Marmont and their whereabouts are unknown, but Defendant Balazs who resides in New York came forward stating none of the allegations from former employees are true.

225. Given Defendant Balazs preoccupation with discounting the improprieties employees endured at his business and Plaintiff's knowledge that Management at Chateau Marmont engaged in widespread discriminatory behavior such as saying racial epithets and more Plaintiff is now seeking to exercise rights he was systematically refused.

## FIRST CAUSE OF ACTION
### (Employment Discrimination, Title VII Civil Rights Violation)

226.    Plaintiff herein adopts and incorporates by reference all allegations set forth in paragraphs "1" through "225" as originally pled herein.

227.    Plaintiff is the victim of employment discrimination in violation of Title VII of the Civil Rights Act of 1964 as amended, Americans with Disabilities Act of 1990 (ADA), Fair Housing and Employment Act (FEHA), and Occupational Safety and Health Act of 1970 (OSHA).

228.    Title VII of the Civil Rights Act of 1964 as amended, protects applicants and employees from discrimination in hiring, promotion, discharge, pay, fringe benefits, job training, classification, referral, and other aspects of employment, on the basis of race, color, religion, sex (including pregnancy), or national origin.

229.    Plaintiff, a Black Male, categorically falls in several protected classes as a person of color having the gender assignment as male and a perceived disability by Chateau Marmont, his employer at the time. Protected categories that apply to Plaintiff include:

- Race

- Color

- Gender

- Disability

- Sex

230.    Plaintiff is a victim of discrimination at Chateau Marmont due to his race, color, gender, disability, and sex.

231.    Plaintiff identifies as African American/Black and belongs to a racial group disproportionately employed and serviced at Chateau Marmont as guests.

31

232.    Chateau Marmont is largely known and recognized as an affluent members-only establishment that caters to Hollywood's Elite: People of Caucasian and Jewish Descent.

233.    Plaintiff, a Black Male, belongs to a minority group disproportionately represented in the Guest Relations Department at Chateau Marmont.

234.    Plaintiff was often the only person of color in his department during scheduled work shifts.

235.    Plaintiff was aware of internal practices at Chateau Marmont, carried out by Hostesses and front-of-the line staff, to ensure Black Staff and Guests were not highly visible to their desired predominantly white core demographic.

236.    Plaintiff often saw celebrity guests of color treated differently and denied entry to Chateau Marmont by White Employees.

237.    Plaintiff often intervened when known People of Color were turned away by White Employees and later suffered consequences in the form of retaliation.

238.    Plaintiff was aware of racially insensitive comments made by Grandinetti such as calling a Black Female Employee "Blackie" amongst other things.

239.    Thus, Plaintiff was a victim of discrimination at Chateau Marmont and belonged to a racial group traditionally subjected to discrimination as patrons and employees.

240.    The Americans with Disabilities Act of 1990, known as ADA, is a civil rights law that prohibits discrimination against individuals with disabilities in all areas of public life, including jobs, schools, transportation, and public and private places open to the public.

241.    Title One details workplace discrimination and affirms that ADA protects employees from workplace discrimination based on a known or perceived disability and

prohibits employers from discriminating against employees or applicants with disabilities in all aspects of employment including compensation, hiring, promotion, termination, and more.

242.    Title One stipulates that ADA:

- Helps people with disabilities access the same employment opportunities and benefits available to people without disabilities.

- Applies to employers with 15 or more employees.

- Requires employers to provide reasonable accommodations to qualified applicants or employees. A "reasonable accommodation" is a change that accommodates employees with disabilities so they can do the job without causing the employer "undue hardship" (too much difficulty or expense).

- Defines disability, establishes guidelines for the reasonable accommodation process, and addresses medical examinations and inquiries.

243.    ADA also protects employees from retaliation when they enforce their rights under the law.

244.    Despite Plaintiff being misdiagnosed and perceived by Skinner and Newman as having a disability no reasonable accommodation was offered and/or made.

245.    The California Fair Employment and Housing Act, known as FEHA, is the primary law that provides employees with protection from discrimination, retaliation, and harassment in employment.

246.    Chateau Marmont is in violation of FEHA because Plaintiff endured discrimination, retaliation, and harassment at work from Management, Human Resources, and Vick to no avail, absent remedy and/or conflict resolution.

247.     Management made no efforts to remedy Plaintiff and/or other Male Employees subjected to Vick's egregious behavior and took no disciplinary actions against Vick despite multiple offenses committed by her against employees (Male Managers: Pollecut, Roelle and Plaintiff).

248.     Instead Grandinetti and Skinner identified Vick as the victim and provided her a designated parking spot. No other employees were provided this consideration or relief and it is therefore discrimination.

249.     Vick was awarded a courtesy parking spot for vile behavior and workplace violations while Plaintiff was unable to receive a simple response from Management regarding grievances he suffered as a result of her.

250.     Vick was also cited as inebriated by employees and Supervisor Roelle during her work shift, the evening of the incident, and no disciplinary actions were taken by Management for the workplace violation.

251.     Management knowingly turned a blind eye and allowed Vick to transition drunkenness into rage that resulted in verbal assault, abuse, and battery to Plaintiff and then assumed no responsibility for the mess they created.

252.     Chateau Marmont has a no tolerance policy for employee drinking during work shifts and terminated other employees for the same offense.

253.     Andre Randle, a Black Male, and former employee, was terminated a few months prior to Vick's incident for being inebriated at work.

254.     Andre Randle was terminated due to violation of Chateau Marmont's Zero Tolerance Policy regarding employee consumption of alcohol while at work.

255.     Nevertheless, Vick was cited as under the influence by Roelle and reported to Upper-Level Management as such and no disciplinary actions were taken against her for being inebriated or any of the many other offenses and workplace violations, she committed during her tenure at Chateau Marmont.

256.     Vick has a clean professional work record at Chateau Marmont clear of workplace discipline, write ups and corrective action plans because she is a white female, a class that is protected and favored at Chateau Marmont.

257.     Management deferred the responsibility of disciplining Vick to Plaintiff, non-Management personnel, after confirming her wrongdoings in violation of the Employee code of Conduct, Harassment Policy, and California Workplace Laws.

258.     Plaintiff's job description as Guest Relations does not grant him supervisory authority and/or the ability to discipline peers.

259.     Management's deferral of disciplinary responsibility and/or solicitation of Plaintiff's authority to determine the course of disciplinary action for Vick was discriminatory because it was not a customary practice extended to all personnel.

260.     Management's refusal to discipline Vick pursuant to the policies outlined in the Employee Code of Conduct and Harassment Policy was a clear violation and breach of their professional obligations, job descriptions, and work agreements with Chateau Marmont and was impartial behavior and preferential treatment given to Vick, a White Female.

261.     Upper-Level Management at Chateau Marmont consisted/consists of disproportionate representation of White Females as compared to any other race, ethnic group, and gender.

262.    Thus, Plaintiff was a minority and part of an underrepresented group at Chateau Marmont in almost every category.

263.    Employee discipline falls under the purview of Management Responsibility and Human Resources at Chateau Marmont so Skinner, Grandinetti, Severse, Pollecut, Roelle, Kelley, and Newman breached their work agreements by failing to discipline Vick.

264.    The aforementioned agents also breached their work agreements by failing to institute the same corrective measures with Vick that were instituted with Andre Randle for the same offense and their negligence and failure to administer fair and equitable remedies to staff was discrimination.

265.    Management and Human Resources discriminated against Plaintiff by failing to discipline Vick for her workplace violations.

266.    Management and Human Resources discriminated against all Chateau Marmont Employees by failing to discipline Vick for workplace violations.

267.    Management and Human Resources discriminated against Plaintiff by deferring their professional obligations and work responsibility of Employee Supervision and Discipline to Plaintiff with respect to Vick.

268.    Management and Human Resources discriminated against Plaintiff by expecting him to engage in employee discipline a responsibility not outlined and/or designated in his work agreement or job description.

269.    Grandinetti, Skinner, and Newman discriminated against Plaintiff and aligned with Vick as a display of sisterhood and feminism because Plaintiff is a Male.

270.    Management and Human Resources discriminated against Plaintiff by assuming Vick was the victim because she is a White Woman and Plaintiff is a Black Male.

271.    Management and Human Resources engaged in systemic racism and oppression and discriminated against Plaintiff by denying him available resources to remedy the grievance with Vick, denying him due process, and assuming he was guilty absent conducting a fair and equitable investigation.

272.    Management and Human Resources engaged in systemic racism and oppression and discriminated against Plaintiff by perpetuating the stigma of him being a bully by failing to acknowledge his grievance and identifying him as the "accused" amongst predominantly White Staff.

273.    Management and Human Resources engaged in systemic racism and oppression and discriminated against Plaintiff by engaging in employment that disproportionately hired people of color with qualifications and experience at Chateau Marmont.

274.    Management and Human Resources intentionally limited the number of minorities and people of color staffed at Chateau Marmont and compensated them with lower wages.

275.    Management and Human Resources at Chateau Marmont compensated people of color and men with experience and higher education with lower wages than White less experienced and uneducated counterparts.

276.    Management and Human Resources subjected Plaintiff to intuitional racism and discrimination that existed at Chateau Marmont since its inception and used it to silence, ostracize, and vilify Plaintiff in support of Vick.

277.    Chateau Marmont has an evidenced history of pay disparities among ethnic minorities and upholds it as a long withstanding discriminatory practice in the workplace.

278.     Occupational Safety and Health Act of 1970, known as OSHA, is a United States law that enforces workplace standards that ensure employees are protected from hazards that compromise their safety and health.

279.     Plaintiff was forced to endure a hostile work environment at Chateau Marmont that contributed to a steady decline in his physical and mental health and overall well-being.

280.     Plaintiff would not have suffered stress or endured psychic harm at work if Management and Human Resources tried to remedy his grievance with Vick with a fair and equitable process as legally mandated.

281.     Chateau Marmont is in violation of OSHA because it promoted a hostile work environment that put Plaintiff and other employees at risk for harm and personal injury due to Management's and Human Resources gross misconduct and negligence in dealing with employee misconduct, discipline, and corrective actions.

282.     Chateau Marmont is in violation of OSHA because it created and embellished a work injury for Plaintiff that did not occur and reported said psychic incident on the OSHA Log in violation of their mandated reporting policy.

283.     OSHA stipulates employers must record any significant work-related injuries and illnesses that are diagnosed by a physician or other licensed health care professional, such as any work-related case involving cancer, chronic irreversible disease, a fractured or cracked bone or a punctured eardrum.

284.     Plaintiff however did not have a work-related incident so an incident should not have been recorded in the OSHA Log. Chateau Marmont created an incident to support the log entry and this was a violation of Plaintiff's trust and OSHA.

285.    Plaintiff submitted a physician's note to excuse an absence that detailed a visit to a therapist and Chateau Marmont used it absent permission and/or consent to initiate a Workers Compensation Claim and reported it to OSHA.

286.    Chateau Marmont diagnosed Plaintiff as having "acute stress disorder from work" in their Employer Initiated Workers Compensation Claim and this was not the diagnosis given to Plaintiff by his physician.

287.    Chateau Marmont logged the work incident fraudulently and input it into their OSHA Log in violation of OSHA's reporting policy for "psychic events".

288.    Plaintiff was not informed about either filing and does not know this to be a customary reporting policy at Chateau Marmont for all employees and it is therefore discrimination.

289.    OSHA Code 1904.5(b)(2)(ix) stipulates employers are not required to record mental illness unless "The illness is a mental illness".

290.    Mental illness will not be considered work-related unless the employee voluntarily provides the employer with an opinion from a physician or other licensed health care professional with appropriate training and experience (psychiatrist, psychologist, psychiatric nurse practitioner, etc.) stating that the employee has a mental illness that is work-related."

291.    Plaintiff's physician's note did not express the diagnosis of "work related" as OSHA stipulates.

292.    However, Management provided Workers Compensation with the classification absent the qualification to do so, thus confirming the filing was fraudulent, deceptive, discriminatory, and in violation of OSHA.

293.     Chateau Marmont, for all of the above cited reasons under this cause of action, is in violation of FEHA because Plaintiff is a victim of workplace discrimination, retaliation, and harassment that was promoted, fostered, and upheld by Management and Human Resources.

294.     Chateau Marmont, for all of the above cited reasons under this cause of action, is in violation of FEHA because Plaintiff is a victim of the victim of workplace violence, intentional infliction of emotional distress, employer negligence, and reckless conduct.

295.     Plaintiff often saw celebrity guests of color treated differently and denied entry to Chateau Marmont by White Employees.

296.     Plaintiff often intervened when known People of Color were turned away by White Employees and later suffered consequences in the form of retaliation.

297.     Plaintiff was aware of racially insensitive comments made by Grandinetti such as calling a Black Female Employee "Blackie" amongst other things.

298.     Thus, Plaintiff was a victim of discrimination at Chateau Marmont and belonged to a racial group traditionally subjected to discrimination as patrons and employees.

299.     The Americans with Disabilities Act of 1990, known as ADA, is a civil rights law that prohibits discrimination against individuals with disabilities in all areas of public life, including jobs, schools, transportation, and public and private places open to the public.

300.     Title One details workplace discrimination and affirms that ADA protects employees from workplace discrimination based on a known or perceived disability and prohibits employers from discriminating against employees or applicants with disabilities in all aspects of employment including compensation, hiring, promotion, termination, and more.

301.     Title One stipulates that ADA:

- Helps people with disabilities access the same employment opportunities and benefits available to people without disabilities.

- Applies to employers with 15 or more employees.

- Requires employers to provide reasonable accommodations to qualified applicants or employees. A "reasonable accommodation" is a change that accommodates employees with disabilities so they can do the job without causing the employer "undue hardship" (too much difficulty or expense).

- Defines disability, establishes guidelines for the reasonable accommodation process, and addresses medical examinations and inquiries.

302.   ADA also protects employees from retaliation when they enforce their rights under the law.

303.   Despite Plaintiff being misdiagnosed and perceived by Skinner and Newman as having a disability no reasonable accommodation was offered and/or made.

304.   The California Fair Employment and Housing Act, known as FEHA, is the primary law that provides employees with protection from discrimination, retaliation, and harassment in employment.

305.   Chateau Marmont is in violation of FEHA because Plaintiff endured discrimination, retaliation, and harassment at work from Management, Human Resources, and Vick to no avail, absent remedy and/or conflict resolution.

306.   Management made no efforts to remedy Plaintiff and/or other Male Employees subjected to Vick's egregious behavior and took no disciplinary actions against Vick despite multiple offenses committed by her against employees (Male Managers:  Pollecut, Roelle and Plaintiff).

307.     Instead Grandinetti and Skinner identified Vick as the victim and provided her a designated parking spot. No other employees were provided this consideration or relief and it is therefore discrimination.

308.     Vick was awarded a courtesy parking spot for vile behavior and workplace violations while Plaintiff was unable to receive a simple response from Management regarding grievances he suffered as a result of her.

309.     Vick was also cited as inebriated by employees and Supervisor Roelle during her work shift, the evening of the incident, and no disciplinary actions were taken by Management for the workplace violation.

310.     Management knowingly turned a blind eye and allowed Vick to transition drunkenness into rage that resulted in verbal assault, abuse, and battery to Plaintiff and then assumed no responsibility for the mess they created.

311.     Chateau Marmont has a no tolerance policy for employee drinking during work shifts and terminated other employees for the same offense.

312.     Andre Randle, a Black Male, and former employee, was terminated a few months prior to Vick's incident for being inebriated at work.

313.     Andre Randle was terminated due to violation of Chateau Marmont's Zero Tolerance Policy regarding employee consumption of alcohol while at work.

314.     Nevertheless, Vick was cited as under the influence by Roelle and reported to Upper-Level Management as such and no disciplinary actions were taken against her for being inebriated or any of the many other offenses and workplace violations, she committed during her tenure at Chateau Marmont.

315.    Vick has a clean professional work record at Chateau Marmont clear of workplace discipline, write ups and corrective action plans because she is a white female, a class that is protected and favored at Chateau Marmont.

316.    Management deferred the responsibility of disciplining Vick to Plaintiff, non-Management personnel, after confirming her wrongdoings in violation of the Employee code of Conduct, Harassment Policy, and California Workplace Laws.

317.    Plaintiff's job description as Guest Relations does not grant him supervisory authority and/or the ability to discipline peers.

318.    Management's deferral of disciplinary responsibility and/or solicitation of Plaintiff's authority to determine the course of disciplinary action for Vick was discriminatory because it was not a customary practice extended to all personnel.

319.    Management's refusal to discipline Vick pursuant to the policies outlined in the Employee Code of Conduct and Harassment Policy was a clear violation and breach of their professional obligations, job descriptions, and work agreements with Chateau Marmont and was impartial behavior and preferential treatment given to Vick, a White Female.

320.    Upper-Level Management at Chateau Marmont consisted/consists of disproportionate representation of White Females as compared to any other race, ethnic group, and gender.

321.    Thus, Plaintiff was a minority and part of an underrepresented group at Chateau Marmont in almost every category.

322.    Employee discipline falls under the purview of Management Responsibility and Human Resources at Chateau Marmont so Skinner, Grandinetti, Severse, Pollecut, Roelle, Kelley, and Newman breached their work agreements by failing to discipline Vick.

323.    The aforementioned agents also breached their work agreements by failing to institute the same corrective measures with Vick that were instituted with Andre Randle for the same offense and their negligence and failure to administer fair and equitable remedies to staff was discrimination.

324.    Management and Human Resources discriminated against Plaintiff by failing to discipline Vick for her workplace violations.

325.    Management and Human Resources discriminated against all Chateau Marmont Employees by failing to discipline Vick for workplace violations.

326.    Management and Human Resources discriminated against Plaintiff by deferring their professional obligations and work responsibility of Employee Supervision and Discipline to Plaintiff with respect to Vick.

327.    Management and Human Resources discriminated against Plaintiff by expecting him to engage in employee discipline a responsibility not outlined and/or designated in his work agreement or job description.

328.    Grandinetti, Skinner, and Newman discriminated against Plaintiff and aligned with Vick as a display of sisterhood and feminism because Plaintiff is a Male.

329.    Management and Human Resources discriminated against Plaintiff by assuming Vick was the victim because she is a White Woman and Plaintiff is a Black Male.

330.    Management and Human Resources engaged in systemic racism and oppression and discriminated against Plaintiff by denying him available resources to remedy the grievance with Vick, denying him due process, and assuming he was guilty absent conducting a fair and equitable investigation.

331.    Management and Human Resources engaged in systemic racism and oppression and discriminated against Plaintiff by perpetuating the stigma of him being a bully by failing to acknowledge his grievance and identifying him as the "accused" amongst predominantly White Staff.

332.    Management and Human Resources engaged in systemic racism and oppression and discriminated against Plaintiff by engaging in employment that disproportionately hired people of color with qualifications and experience at Chateau Marmont.

333.    Management and Human Resources intentionally limited the number of minorities and people of color staffed at Chateau Marmont and compensated them with lower wages.

334.    Management and Human Resources at Chateau Marmont compensated people of color and men with experience and higher education with lower wages than White less experienced and uneducated counterparts.

335.    Management and Human Resources subjected Plaintiff to intuitional racism and discrimination that existed at Chateau Marmont since its inception and used it to silence, ostracize, and vilify Plaintiff in support of Vick.

336.    Chateau Marmont has an evidenced history of pay disparities among ethnic minorities and upholds it as a long withstanding discriminatory practice in the workplace.

337.    Occupational Safety and Health Act of 1970, known as OSHA, is a United States law that enforces workplace standards that ensure employees are protected from hazards that compromise their safety and health.

338.    Plaintiff was forced to endure a hostile work environment at Chateau Marmont that contributed to a steady decline in his physical and mental health and overall well-being.

339.     Plaintiff would not have suffered stress or endured psychic harm at work if Management and Human Resources made an effort to remedy his grievance with Vick with a fair and equitable process as legally mandated.

340.     Chateau Marmont is in violation of OSHA because it promoted a hostile work environment that put Plaintiff and other employees at risk for harm and personal injury due to Management's and Human Resources gross misconduct and negligence in dealing with employee misconduct, discipline, and corrective actions.

341.     Chateau Marmont is in violation of OSHA because it created and embellished a work injury for Plaintiff that did not occur and reported said psychic incident on the OSHA Log in violation of their mandated reporting policy.

342.     OSHA stipulates employers must record any significant work-related injuries and illnesses that are diagnosed by a physician or other licensed health care professional, such as any work-related case involving cancer, chronic irreversible disease, a fractured or cracked bone or a punctured eardrum.

343.     Plaintiff however did not have a work-related incident so an incident should not have been recorded in the OSHA Log. Chateau Marmont created an incident to support the log entry and this was a violation of Plaintiff's trust and OSHA.

344.     Plaintiff submitted a physician's note to excuse an absence that detailed a visit to a therapist and Chateau Marmont used it absent permission and/or consent to initiate a Workers Compensation Claim and reported it to OSHA.

345.     Chateau Marmont diagnosed Plaintiff as having "acute stress disorder from work" in their Employer Initiated Workers Compensation Claim and this was not the diagnosis given to Plaintiff by his physician.

346.    Chateau Marmont logged the work incident fraudulently and input it into their OSHA Log in violation of OSHA's reporting policy for "psychic events".

347.    Plaintiff was not informed about either filing and does not know this to be a customary reporting policy at Chateau Marmont for all employees and it is therefore discrimination.

348.    OSHA Code 1904.5(b)(2)(ix) stipulates employers are not required to record mental illness unless "The illness is a mental illness".

349.    Mental illness will not be considered work-related unless the employee voluntarily provides the employer with an opinion from a physician or other licensed health care professional with appropriate training and experience (psychiatrist, psychologist, psychiatric nurse practitioner, etc.) stating that the employee has a mental illness that is work-related."

350.    Plaintiff's physician's note did not express the diagnosis of "work related" as OSHA stipulates.

351.    However, Management provided Workers Compensation with the classification absent the qualification to do so, thus confirming the filing was fraudulent, deceptive, discriminatory, and in violation of OSHA.

352.    Chateau Marmont, for all of the above cited reasons under this cause of action, is in violation of FEHA because Plaintiff is a victim of workplace discrimination, retaliation, and harassment that was promoted, fostered, and upheld by Management and Human Resources.

353.    Chateau Marmont, for all of the above cited reasons under this cause of action, is in violation of FEHA because Plaintiff is a victim of the victim of workplace violence, intentional infliction of emotional distress, employer negligence, and reckless conduct.

354.    By reason of the foregoing, defendants are liable in an amount in excess of $75,000.00, plus interest, attorneys' fees, and costs.

## SECOND CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

355.    Plaintiff herein adopts and incorporates by reference all allegations set forth in paragraphs "1" through "354" as originally pled herein.

356.    Plaintiff is the victim of workplace violence, intentional infliction of emotional distress, and reckless conduct in violation of California Civil Code 1714(a), OSHA, California Civil Jury Instruction CACI No. 426 Negligent Hiring, Supervision, or Retention of Employees and FEHA.

357.    Intentional infliction of emotional distress is conduct by an employer that is outrageous and is either intentional or committed with a reckless disregard for the probability that an employee would experience severe emotional distress.

358.    California Civil Code Section 1714 defines the obligations imposed on individuals in California under the law and stipulates everyone is responsible for an injury sustained to another by his or her lack of ordinary care in the management of his or her property or person, except so far as the latter has brought the injury upon himself or herself.

359.    Plaintiff endured intentional emotional distress from Vick who deliberately chose to publicly humiliate, berate, and vilify Plaintiff absent reason or probable cause and Chateau Marmont Management and Human Resources refused to provide relief to remedy the circumstance.

360.    Plaintiff endured intentional emotional distress from Vick who deliberately chose to verbally assault, threaten, harass, and bully him absent reason or probable cause and Chateau Marmont Management and Human Resources refused to provide relief to remedy the circumstance.

361.    Plaintiff endured intentional emotional distress from Vick who deliberately sent sexually explicit rapacious text communications (sexual harassment) to Plaintiff with knowledge of him being bore out of rape and Chateau Marmont Management and Human Resources refused to provide relief to remedy the circumstance.

362.    Plaintiff endured intentional emotional distress from Vick who deliberately bullied and brandished Plaintiff as a bully amongst Chateau Marmont's Management, Staff, and Guests and Chateau Marmont Management and Human Resources refused to provide relief to remedy the circumstance.

363.    Plaintiff endured intentional emotional distress from Vick who deliberately sought to "make him sorry" as communicated despite Plaintiff not violating any workplace policies or doing anything to warrant him being sorry and Chateau Marmont Management and Human Resources refused to provide relief to remedy the circumstance.

364.    California law makes an employer liable for an employee's negligence, recklessness, or intentional wrongful acts when the employer knew or should have known that the employee was a risk to others. This law is known as California's law on negligent hiring, supervision, or retention of an employee.

365.    Plaintiff attempted to communicate the details regarding multiple grievances with Vick to Management and Human Resources at Chateau Marmont and was intentionally ignored and suffered immeasurable stress as a result.

366.    Plaintiff endured undeserved emotional stress as result of being ignored by Management and Human Resources and was forced to yield a satisfactory work performance in a hostile work environment perpetuated by Management and Human Resources reckless disregard of Plaintiff's mistreatment from Vick.

367.    Vick was not held accountable for workplace violations by Chateau Marmont Management or Human Resources Personnel.

368.    Chateau Marmont Management and Human Resources deferred the responsibility of disciplining Vick to Plaintiff and failed to discipline Vick.

369.    OSHA enforces workplace standards to ensure employees are protected from hazards that compromise their safety and health.

370.    Chateau Marmont's failure to discipline Vick recklessly endangered Plaintiff and held Plaintiff's safety in disregard by placing it further at-risk in violation of OSHA.

371.    Chateau Marmont is in violation of OSHA because its agents did not maintain a safe work environment for Plaintiff and other employees as prescribed.

372.    Vick engaged in behaviors that are dangerous and threaten the morale of healthy workplaces and the behavior was not corrected by Management or Human Resources, thus allowing it to persist and escalate to additional destructive behaviors.

373.    Plaintiff was subjected to Vick's unwarranted advances, frightening verbal assaults, false allegations, threats, and statements for an unprecedented period of time to no avail (no relief was given).

374.    Vick's conduct was extreme, outrageous, and intentional with the purpose to frighten Plaintiff and inflict emotional distress and harm.

375.    Vick's behavior created a hostile work environment and Management and Human Resources failure to provide relief and/or remedy to Plaintiff contributed to escalating tensions in the already incredibly hostile workplace.

376.    Vick had prior knowledge of Plaintiff's sensitivity to rape and rape culture due to him being bore out of rape.

377.    Nevertheless, Vick after weeks of bullying Plaintiff, and making false accusations to harm his reputation and alienating him among peers and Management was given a meeting to express her feelings because they were the only ones that mattered.

378.    Vick admitted knowing Plaintiff was bore from rape prior to sending him accusatory and rapacious explicit text communications but sent them anyway.

379.     Grandinetti and Skinner became performative and conveniently empathetic to Plaintiff only after Vick's public admission of guilt and wrongdoings and deferred responsibility on Plaintiff to direct them regarding how to discipline Vick.

380.    Plaintiff expressed he did not feel safe around Vick to Management considering she lied on him yet was given no relief, acknowledgement, or consideration.

381.    All available remedies and considerations regarding the grievance between Plaintiff and Vick were given to Vick.

382.    Plaintiff was not given the benefit of the doubt by Management and Human Resources and was presumed guilty absent a proper investigation and or inquiry.

383.    Management proceeded with the ambush meeting giving no consideration to Plaintiff after he vocalized discomfort.

384.    Grandinetti rebutted stating employees did not have to like or trust each other to work together, were expected to fulfill their responsibilities, or would be subject to disciplinary measures.

385.    Grandinetti's response was negligent, intentionally ignored Plaintiff's vocalization of the duress he was experiencing, and significantly discounted the trauma inflicted upon him in the increasingly hostile work environment at Chateau Marmont.

386.    Grandinetti's disregard for Plaintiff extended to Management at large who refused to discipline Vick even after her admittance of guilt and they became aware of her multiple wrongdoings to Plaintiff and others (Roelle as an example).

387.    Plaintiff expressed stress he was undergoing, and relief was not given in the form of best practices and established protocol at Chateau Marmont.

388.    Instead, Management intentionally pivoted their responsibility to Plaintiff who had already expressed undergoing trauma and their decision to do defer the responsibility of chastising and disciplining Vick to Plaintiff was a unique practice being employed with Plaintiff.

389.    Management deferred the responsibility of disciplinary actions and/or the corrective plan to Plaintiff to place the burden on him and free them of their required work responsibilities.

390.    Management had no interest in rectifying Plaintiff's grievance and deferred their responsibility to demonstrate false interest and suggest a proper remedy was provided.

391.    Management deferring authority to Personnel in the form of peer discipline is not a responsibility outlined in any job description for non-Management personnel at Chateau Marmont.

392.    Management was well aware of the fragility of Plaintiff and intentionally deferred Vick's disciplinary responsibility knowing he was already overwhelmed and unprepared to advise them regarding how to do their jobs.

393.    Management deferred disciplinary responsibility of Vick as a manner to further manipulate Plaintiff and suggest they were sorry for ignoring his grievance while continuing to ignore it.

394.     Management deferred the responsibility of disciplining Vick to Plaintiff to intentionally cause him additional distress as retaliation for his constant follow-up and vocalization regarding their failure to fairly address his incident with Vick.

395.     Management intentionally deferred the responsibility of disciplining Vick to Plaintiff to further his mental anguish and distress, create a more hostile environment, and incite him into rage and/or a public melt down to initiate an employer filed Workers Compensation Claim and promote the idea of Plaintiff being unstable to work and in need of a mental evaluation from Chateau Marmont Physicians.

396.     Management intentionally ignored communications from Plaintiff regarding his grievance to agitate him, demonstrate he was powerless, and nothing could be done to counter it.

397.     By reason of the foregoing, defendants are liable in an amount in excess of $75,000.00, plus interest, attorneys' fees, and costs.

## THIRD CAUSE OF ACTION
### (Hostile Work Environment)

398.      Plaintiff herein adopts and incorporates by reference all allegations set forth in paragraphs "1" through "338" as originally pled herein.

399.     Plaintiff is the victim of unlawful workplace harassment, bullying, and a hostile work environment in violation of California Gov. Code, § 12940, subd. (j)(1), Title VII of the Civil Rights Act of 1964 as amended, California Civil Code 1714(a), ADA, The California Fair Employment and Housing Act (FEHA) and OSHA.

400.     A hostile work environment can severely diminish an employee's productivity and self-esteem both in and out of the workplace.

401.     According to California Gov. Code § 12940 subd (j), unlawful workplace harassment occurs when a person directs negative, inappropriate, or unwanted conduct at a worker based on certain protected characteristics.

402.     A hostile work environment is created when anyone in a workplace commits this type of harassment, including a co-worker, a supervisor or manager, a contractor, client, vendor, or visitor.

403.     In addition, other employees can also be impacted by the harassment (by hearing or viewing it) and are also considered victims.

404.     They too might find the work environment intimidating or hostile, and it might affect their work performance. In this way, bullies and harassers can affect many more people than just the targeted employee.

405.     Unlawful harassment in the workplace can take many forms, including:

- Inappropriate jokes, derogatory comments, or innuendo.

- Physical harassment, like unwanted touching, hitting, or approaching.

- Verbal Threats or implied threats; and

- Showing favoritism base on a protected characteristic.

406.     Plaintiff was subjected to verbal assault and threats, bullying, harassment, and intimidation by Vick as evidenced and reported in his October 4th Incident Report and subsequent communications to Management and Human Resources.

407.     Vick threatened Plaintiff he would be sorry for not escorting her to her vehicle then punished and bullied him by promoting lies and alternate facts about their encounter to peers, management, and guests at Chateau Marmont.

408.    Vick used a fake feminist narrative to lobby support of peers and approached Chateau Marmont Hostess Katrina Spencer after assaulting Plaintiff to remind her that women must stick together under all circumstances and to inform her regarding the incident with Plaintiff.

409.    Vick was audacious in approaching Katrina Spencer considering she was a witness to Vick's assault of Plaintiff.

410.    This encounter was odd considering Vick days prior, on October 5th, 2019, the evening of the incident, pressured Plaintiff to negligently leave his Black Female Counterpart Katrina Spencer at 2:33am in the morning to escort her to her vehicle.

411.    Thus, Vick is not a feminist that cares and uplifts other women and instead is a self-indulged woman that wants what she wants at the potential expense and demise of others.

412.    Vick gave no consideration to Katrina Spencer's safety during her work shift and insisted that Plaintiff escort her who was off of work to her vehicle despite Plaintiff and Katrina Spencer still being at work.

413.    Vick bullied Plaintiff by acting as a victim and embellishing the truth amongst peers to ensure Plaintiff was vilified, ostracized, and sorry as she threatened, he would be.

414.    Vick's agenda to cause intentional premeditated harm to Plaintiff was executed through rigorous harassment, bullying, and unwarranted escalation of a false narrative to Management to ensure Plaintiff was penalized absent doing any wrongdoings.

415.    Vick's misconduct, violation of workplace policies, and rogue behavior catapulted her as a defiant feminist martyr at Chateau Marmont and incited a hostile work environment.

416.     Vick victimized Plaintiff due to an ideology of feminism that encouraged emasculation of men by any means necessary and was emboldened to do so by receiving support by Grandinetti and Skinner.

417.     Management and Human Resources ignored Plaintiff and allowed Vick's misconduct and mistreatment of Plaintiff to persist.

418.     Plaintiff followed protocol by filing an incident report but did not receive acknowledgment of the submission or several communications to Management and Human Resources regarding his horrific experience with Vick.

419.     At the same time Plaintiff was being ignored by Management and Human Resources, Vick was being supported and emboldened to continue bullying and harassing Plaintiff and others.

420.     Vick was supported by Management and provided meetings to express concerns about the exact incident Plaintiff was being denied the ability to discuss and/or remedy.

421.     Vick was emboldened by Management and Human Resources to circulate false claims about Plaintiff and other Chateau Marmont Employees and did so at the meeting in the company of other personnel.

422.     Management Skinner and Grandinetti and Human Resources Newman ignored multiple communications from Plaintiff regarding the incident with Vick and instead gave their time and attention to Vick, the aggressor, thus creating a hostile work environment.

423.     Skinner and Newman filed a false insurance claim (Workers Compensation) and diagnosed Plaintiff with a false medical condition and logged it on the OSHA Report (a document that all personnel can access).

424.    Skinner and Newman used their positions to bully Plaintiff for voicing concerns and filed a false insurance claim to suggest his mental health was compromised while ignoring his grievance to alienate him among Chateau Marmont Staff.

425.    California Law, The Fair Employment and Housing Act (FEHA), prohibits discrimination, harassment and retaliation and requires that employers "take reasonable steps to prevent and correct wrongful (harassing, discriminatory, retaliatory) behavior in the workplace (Cal. Govt. Code §12940(k)).[1]

426.    Management and Human Resources at Chateau Marmont did not take reasonable actions to prevent or correct wrongful behaviors in the workplace.

427.    Management and Human Resources at Chateau Marmont significantly breached their professional work obligations and sworn duties by ignoring Plaintiff's grievance and failing to conduct an investigation.

428.    Management and Human Resources at Chateau Marmont assisted Vick as bullies of Plaintiff and further ostracized Plaintiff by attacking his mental health and filing false reports to stigmatize him as the perpetrator versus conducting a biased free investigation.

429.    Despite Plaintiff's outreach to Management to resolve the situation and bring justice to his reputation his requests went unanswered and Vick's contempt and harmful behaviors escalated. This is the very essence of a hostile work environment.

430.    By reason of the foregoing, defendants are liable in an amount in excess of $75,000.00, plus interest, attorneys' fees, and costs.

## FOURTH CAUSE OF ACTION
### (Invasion of Privacy)

---

[1] *California Workplace Harassment Guide: https://www.dfeh.ca.gov/wp-content/uploads/sites/32/2017/06/DFEH-Workplace-Harassment-Guide.pdf*

431.     Plaintiff herein adopts and incorporates by reference all allegations set forth in paragraphs "1" through "430" as originally pled herein.

432.     Plaintiff is the victim of invasion of privacy and unlawful healthcare disclosures in violation of California's Confidentiality of Medical Information Act (CMIA), First and Fourth Amendment Constitutional Rights, Family and Medical Leave Act (FMLA), ADA, OSHA, and the Health Insurance Portability and Accountability Act (HIPAA).

433.     Invasion of privacy with respect to employment generally refers to a situation in which an employee feels that an employer has violated his or her rights to privacy by obtaining and/or disclosing information gained from a source in which the employee had a reasonable expectation of privacy.

434.     Plaintiff is a victim of invasion of privacy because Chateau Marmont used a physician's note submitted by Plaintiff to excuse an absence absent his permission, consent, and/or knowledge to seek unwarranted medical intervention for Plaintiff absent a qualifying psychic incident or work-related incident to substantiate it.

435.     Plaintiff is a victim of invasion of privacy because Chateau Marmont's unauthorized use and storage of his physician's note shared his personal information publicly through facsimile transmission of his medical records to their insurer absent his consent and/or knowledge.

436.     This is a significant breach of trust because Plaintiff is a known actor who is served as the national and international face for several worldwide brands and campaigns.

437.     Plaintiff is recognizable and his private medical record was shared publicly with agents of Chateau Marmont, with a history of breaching Plaintiff's trust that includes Skinner, Grandinetti, and Newman who disclosed the details of the private medial note with others.

438.    Plaintiff is a victim of invasion of privacy because Newman worked as the Executive Assistant and as Human Resource Coordinator at Chateau Marmont concurrently and the roles were a conflict of interest given she could not perform objectively as Human Resource Coordinator while also working in the capacity of Executive Assistant for Skinner and Grandinetti.

439.    Plaintiff's personal medical health information being disclosed to Newman was a significant breach of trust given her partiality to her direct supervisors Grandinetti and Skinner.

440.    Newman's partiality to her superiors proved harmful to Plaintiff with her employer-initiated insurance claim to Workers Compensation Claim that used the improper medical disclosure of his physician's note to create a further unqualified diagnosis of Plaintiff to suggest he suffered a mental disorder that affected his work ability.

441.    Newman and Skinner violated Plaintiff's right to privacy with the employer-initiated insurance claim filing and misused his physician's note submitted to excuse an absence.

442.    The Americans with Disabilities Act, the Family and Medical Leave Act, the Fair Credit and Reporting Act, and regulations issued under the Health Insurance Portability and Accountability Act all relate, directly or indirectly, to medical information in an employer's possession.

443.    There are four circumstances that qualify an employer to share private medical information of an employee:

444.    Disclosure to managers and supervisors when the medical information is necessary to provide reasonable accommodations for the employee (mostly applies to the ADA).

445.    Disclosure to safety personnel and first aid providers if the employee would need emergency medical treatment.

446.     Disclosure to authorized personnel in the course of a federal or state workplace investigation.

447.     Disclosure to authorized personnel in the course of an insurance or worker's compensation claim.

448.     Chateau Marmont did not meet the criteria listed above to disclose Plaintiff's physician's note to their insurer Sompo International as a supporting document for their employer-initiated Workers Compensation Filing.

449.     Chateau Marmont embellished the employer-initiated filing and fraudulently created a psychic incident to substantiate the unwarranted claim.

450.     Chateau Marmont's employer-initiated claim did not meet the minimum requirement of absences and qualified incident qualification to initiate a Workers Compensation Claim. Thus, the claim would not have been approved and thus was not established to accommodate Plaintiff.

451.     Chateau Marmont did not submit the claim as a reasonable accommodation to Plaintiff because Management and Human Resources fail to acknowledge any condition, incident, circumstance, or grievance was present and did not speak to Plaintiff regarding it or a perceived illness until one month after the claim was filed.

452.     Plaintiff did not become aware that his privacy was violated, and physician's note was faxed to Sompo International by Chateau Marmont absent his consent until December 9th, 2019 (two months after the employer-initiated filing).

453.     Plaintiff did not become aware that an employer-initiated claim was filed until December 1st, 2019 (thirty-one days after the filing) and this was a violation of California

Workers Compensation Law that stipulates employees must receive a copy of filings within twenty-four hours of submission.

454.     Plaintiff was caused further emotional grief and stress upon learning Skinner and Newman were aware of his private physician's note details and chose to embellish them with an improper and unqualified diagnosis to create a false insurance claim.

455.     Plaintiff became alarmed and further stressed upon learning the insurer thought he filed the fraudulent claim versus Chateau Marmont his employer.

456.     Plaintiff suffered additional stress after confirming Skinner and Newman filed the unlawful Workers Compensation Claim to create a circumstance for his mental competency to be tested after obtaining his physician's note to excuse an absence.

457.     Plaintiff submitted his physician's note to Severse, and it was somehow used to file an unrequested insurance claim unbeknownst to Plaintiff instead of being filed away pursuant to ADA, FMLA, CMIA, FEHA, and EEOC employer medical record filing protocols.

458.     CMIA stipulates that employers who receive medical information shall establish appropriate procedures to ensure the confidentiality and protection from unauthorized use and disclosure of that information.

459.     These procedures may include, but are not limited to, instruction regarding confidentiality of employees and agents handling files containing medical information, and security systems restricting access to files containing medical information.

460.     No employer shall use, disclose, or knowingly permit its employees or agents to use or disclose medical information which the employer possesses pertaining to its employees without the patient having first signed an authorization under Section 56.11 or Section 56.21 permitting such use or disclosure, except as follows: (1) The information may be disclosed if the

disclosure is compelled by judicial or administrative process or by any other specific provision of law. (2) That part of the information which is relevant in a lawsuit, arbitration, grievance, or other claim or challenge to which the employer and employee are parties and in which the patient has placed in issue his or her medical history, mental or physical condition, or treatment may be used or disclosed in connection with that proceeding. (3) The information may be used only for the purpose of administering and maintaining employee benefit plans, including health care plans and plans providing short-term and long- term disability income, workers' compensation and for determining eligibility for paid and unpaid leave from work for medical reasons.

461.    (4) The information may be disclosed to a provider of health care or other health care professional or facility to aid the diagnosis or treatment of the patient, where the patient or other person specified in subdivision (c) of Section 56. 21 is unable to authorize the disclosure. (d) If an employer agrees in writing with one or more of its employees or maintains a written policy which provides that particular types of medical information shall not be used or disclosed by the employer in particular ways, the employer shall obtain an authorization for such uses or disclosures even if an authorization would not otherwise be required by subdivision (c). *(Repealed and added by Stats. 1981, Ch. 782, Sec. 2.)*

462.    Chateau Marmont is in violation of CMIA because Management and Human Resources did not inform Plaintiff regarding the employer-initiated Workers Compensation Claim and did not have written authorization and/or consent from Plaintiff to utilize the physician's note he submitted to excuse an absence for the purpose of filing the claim.

463.    According to CMIA an authorization for an employer to disclose medical information shall be valid if it complies with all of the following: (a) Is handwritten by the person who signs it or is in a typeface no smaller than 14-point type.

464.     (b) Is clearly separate from any other language present on the same page and is executed by a signature that serves no purpose other than to execute the authorization.

465.     (c) Is signed and dated by one of the following: (1) The patient, except that a patient who is a minor may only sign an authorization for the disclosure of medical information obtained by a provider of health care in the course of furnishing services to which the minor could lawfully have consented under Part 1 (commencing with Section 25) or Part 2.7 (commencing with Section 60) of Division 1. (2) The legal representative of the patient if the patient is a minor or incompetent.

466.     Chateau Marmont does not possess a completed written authorization granting any of its agent's permission to use the physician's note submitted by Plaintiff to excuse an absence to file a Workers Compensation Claim or for any other purpose.

467.     Under the Americans with Disabilities Act (ADA), employee medical information must be kept confidential and may only be shared in extremely limited circumstances.

468.     Chateau Marmont's disclosure of Plaintiff's physician's note was not authorized and is a violation of ADA.

469.     By reason of the foregoing, defendants are liable in an amount in excess of $75,000.00, plus interest, attorneys' fees, and costs.

## FIFTH CAUSE OF ACTION
### (Due Process, Fourteenth Amendment)

470.     Plaintiff herein adopts and incorporates by reference all allegations set forth in paragraphs "1" through "408" as originally pled herein.

471.     Plaintiff was denied due process in accordance with Title VII of the Civil Rights Act of 1964, FEHA, and the Fourteenth Amendment of the United States Constitution.

472.     Chateau Marmont refused to grant Plaintiff relief as promised by the Fourteenth Amendment of the United States Constitution (U.S. Constitution), a right unequivocally promised and available to all Americans.

473.     The right to privacy is most often cited in the Due Process Clause of the 14th Amendment, which states: No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

474.     The Fourteenth Amendment states, "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

475.     Chateau Marmont violated Plaintiff's right to due process.

476.     Due process of law, in the context of the workplace, is designed to protect the rights of all employees within the framework of the U.S. Constitution.

477.     Employers have an obligation to relate all circumstances associated with a job to employees, including expectations and grievances.

478.     Due Process provides for employers to be fair to all parties involved during investigation processes which includes, but is not limited to the following:

- Conducting a thorough interview with the complaining party, preferably in person.

- Giving the accused party a chance to tell his/her side of the story, preferably in person. The accused party is entitled to know the allegations being made against him/her;

however, it is good investigatory process to reveal the allegations during the interview rather than before the interview takes place.

- Interviewing relevant witnesses and reviewing relevant documents; and

- Management should reach a reasonable and fair conclusion based on the information collected, reviewed, and analyzed during the investigation.

479.    Management and Human Resources at Chateau Marmont failed to provide Plaintiff a fair and equitable process, inquiry, and/or investigation regarding his grievances and made no reasonable effort to remedy him after learning of the grievances.

480.    This failure was a breach of Chateau Marmont's responsibility to provide a fair workplace and due process pursuant to FEHA which prohibits discrimination, harassment and retaliation and requires that employers "take reasonable steps to prevent and correct wrongful (harassing, discriminatory, retaliatory) behavior in the workplace.

481.    Management and Human Resources at Chateau Marmont failed to respond to Plaintiff regarding the incident with Vick, did not acknowledge receipt of Plaintiff's communications, did not meet with Plaintiff to launch an investigation on his behalf, or initiate follow-up with Plaintiff regarding his grievance.

482.    Plaintiff during a casual encounter with Grandinetti learned he was accused of bullying by Vick and Management and Human Resources were looking into the matter.

483.    Thus, Management and Human Resources were in communications with Vick yet failed to extend the same consideration to Plaintiff.

484.    Plaintiff was never formally interviewed as the subject of an investigation; however, Vick was given a complimentary parking spot on premise after the incident and the

consideration of meetings with Management and Human Resources to express her concerns and mediate her alleged grievances.

485.    Plaintiff was ignored by Management and Human Resources and left to endure further bullying, harassment, and intimidation from Vick who promised "he would be sorry" despite Plaintiff not doing anything to render him apologetic.

486.    After being informed Management was "looking into the matter" on behalf of Vick Plaintiff learned Grandinetti was not doing the same on his behalf because she was not aware of his grievance.

487.    Meanwhile, Plaintiff had sent numerous email communications and text messages to Management and Human Resources detailing the grievance with the incident report attached.

488.    Grandinetti's admission of ignorance alarmed Plaintiff because she had to be aware of Plaintiff's involvement due to her meetings with Vick, therefore due process should have incited Management and Human Resources to follow-up with Plaintiff even if he had not reached out to them directly.

489.    Management and Human Resources failed to follow-up with Plaintiff even after Grandinetti communicated they were "looking into" Vick's claim of bullying.

490.    "Looking into the matter" suggested a formal investigation was underway yet Plaintiff and witnesses to the incident were not interviewed by Management or Human Resources.

491.    A formal investigation as prescribed by California Law regarding the incident between Vick and Plaintiff did not take place at Chateau Marmont, thus violating Plaintiff's basic human right of due process.

492.    Plaintiff received no follow-up to multiple emails or after filing a formal incident report pursuant to company policy.

493.    Plaintiff was never interviewed after being told by Grandinetti a formal investigation was underway.

494.    Plaintiff was not interviewed by Management regarding his grievance with Vick or regarding Vick's grievance with him.

495.    Plaintiff was not afforded a fair and equitable investigation regarding Vick's alleged grievance with him.

496.    Plaintiff did not receive an acknowledgment from Management that his grievance was being investigated nor any communications regarding it.

497.    Plaintiff was never informed an investigation regarding his accusations of Vick was underway.

498.    Management failed to acknowledge wrongdoings of Vick after learning of workplace violations and took no disciplinary actions to remedy said violations.

499.    Plaintiff did not receive any communications from Management acknowledging any findings after the alleged investigation on behalf of Vick but did learn of Vick being rewarded a complimentary parking space in the Company Parking Lot.

500.    Management allegedly looked into the matter for Vick and failed to take disciplinary action pursuant to company policy after learning of violations Vick committed that breached her work agreement with Chateau Marmont.

501.    By reason of the foregoing, defendants are liable in an amount in excess of $75,000.00, plus interest, attorneys' fees, and costs.

## SIXTH CAUSE OF ACTION
### (Defamation)

502.   Plaintiff herein adopts and incorporates by reference all allegations set forth in paragraphs "1" through "501" as originally pled herein.

503.   Plaintiff is a victim of defamation and false statement of facts in violation of California, Civil Code §§ 45-47, FEHA, Workers Compensation Law, and OSHA.

504.   Defamation occurs when one person publishes a false statement that tends to harm the reputation of another person. Chateau Marmont is guilty of committing written and spoken definition against Plaintiff.

505.   Plaintiff is a victim of defamation that includes slander, spoken defamation, and libel, written defamation.

506.   Libel states a defamatory statement must be an assertion of fact versus an opinion.

507.   Chateau Marmont met this qualification with their unlawful employer-initiated Workers Compensation Claim filing that included false information and a misdiagnosis of Plaintiff.

508.   Chateau Marmont filed documents that included an unlawful and unauthorized medial disclosure regarding Plaintiff and transmitted the documents to Sompo International their Insurer via facsimile.

509.   The unauthorized documents used to substantiate their claim and disclosures were false and therefore libelous.

510.   Their subsequent unlawful written disclosures to OSHA and inclusion on the reporting documents that other employees are privy were also libelous.

511.   Grandinetti approached Plaintiff regarding bullying Vick absent a proper investigation and/or inquiry and organized a meeting to address Vick's allegations.

512.    The ambush meeting to address Vick's grievances initiated with an accusatory rant from Grandinetti to Plaintiff addressing workplace bullying. Thus, Plaintiff was accused of bullying by Management in front of other personnel and it was slanderous.

513.    By reason of the foregoing, defendants are liable in an amount in excess of $75,000.00, plus interest, attorneys' fees, and costs.

## SEVENTH CAUSE OF ACTION
### (OSHA and Workers Compensation Violations)

514.    Plaintiff herein adopts and incorporates by reference all allegations set forth in paragraphs "1" through "513" as originally pled herein.

515.    Plaintiff is the victim of an unlawful Workers Compensation filing in violation of California Civil Code Law 56.20 (c), OSHA Code 1904.5(b)(2)(ix), ADA, FMLA, and Title VII of the Civil Rights Act of 1964.

516.    CALIFORNIA CIVIL CODE LAW 56.20 (c) states, "No employer shall use, disclose, or knowingly permit its employees or agents to use or disclose medical information which the employer possesses pertaining to its employees without the patient having first signed an authorization under Section 56.11 or Section 56.21 permitting such use or disclosure.

517.    Plaintiff did not authorize and/or have knowledge that his physician's note was used by Management to file a Workers Compensation Claim and did not become aware of the filing until a month later.

518.    Plaintiff did not provide Management with written consent to use the physician's note.

519.    By reason of the foregoing, defendants are liable in an amount in excess of $75,000.00, plus interest, attorneys' fees, and costs.

## EIGHTH CAUSE OF ACTION
### (Insurance Fraud)

520.    Plaintiff herein adopts and incorporates by reference all allegations set forth in paragraphs "1" through "519" as originally pled herein.

521.    Plaintiff is the victim of Workers Compensation Insurance Fraud in violation of OSHA, the False and Fraudulent Claims Act, and Insurance Code 1871.4.

522.    Plaintiff is a victim of insurance fraud due to Chateau Marmont's unauthorized employer-initiated Workers Compensation Claim utilization of false information.

523.    In California, the primary statute under which workers' compensation fraud is charged is the False and Fraudulent Claims Act.

524.    Insurance Code 1871.4, makes it a crime to knowingly make a false or fraudulent statement or material representation to recover insurance benefits, knowingly present a false or fraudulent written or oral statement in support of (or against) a claim to recover insurance benefits, or knowingly assist, aid, conspire with, or solicit a person to recover insurance benefits without cause.

525.    Chateau Marmont made several false claims regarding Plaintiff in their unauthorized filing.

526.    Chateau Marmont attributed a false diagnosis to Plaintiff for the purpose of opening the unwarranted and unrequested claim.

527.    Chateau Marmont embellished the claim by fabricating an incident to support their false filing.

528.     Chateau Marmont embellished the date of the fabricated incident and indicated it as a day when Plaintiff was not at work.

529.     Chateau Marmont created the incident to unlawfully file the claim.

530.     Chateau Marmont indicated Severse as the personnel that filed the incident that incited the filing, but no such record is on file and Severse had no knowledge of the filing taking place despite him being Plaintiff's Manager.

531.     Plaintiff was not informed about the filing pursuant to the stipulations of California Workers Compensation Law that states employees must receive a copy of the filing within twenty-four hours.

532.     This was a significant breach of trust that violated Plaintiff's privacy, human rights, and the law.

533.     Severse's trust was also breached by the filing by Skinner and Newman.

534.     Plaintiff lacks sufficient knowledge regarding Grandinetti's knowledge of the filing but can confirm it was approved and submitted to Sompo International absent Severse's knowledge.

535.     By reason of the foregoing, defendants are liable in an amount in excess of $75,000.00, plus interest, attorneys' fees, and costs.

### NINTH CAUSE OF ACTION
### (Copyright Infringement)

536.     Plaintiff herein adopts and incorporates by reference all allegations set forth in paragraphs "1" through "535" as originally pled herein.

537.     Plaintiff and his physician are victims of copyright infringement in violation of the copyright law of the United States (17 U.S.C. § 101 et seq.)

538.     Plaintiff provided a physician's note to Management to excuse an absence and for no other purpose but later learned Management used the document absent his permission and circulated it to unauthorized and unapproved third parties.

539.     Management violated Plaintiff by exploiting the note absent his permission, using it as basis to give Plaintiff a misdiagnosis, discredit the professional opinion of Plaintiff's Physician, and circulated it to third parties absent permission and/or informed consent.

540.     Exploitation in this sense refers to infringing upon the exclusive rights, such as the right to distribute, reproduce, perform, or display, that are granted to the copyright holder.

541.     Management did not have permission from Plaintiff and/or his Physician to give Plaintiff's private medical records to third parties.

542.     Management deliberately altered a qualified medical opinion absent permission or informed consent from the copyright holders and forwarded privileged and protected information via facsimile and email to additional unauthorized parties.

543.     If Plaintiff presented the need for the filing to be necessitated Management made no efforts to make reasonable accommodations pursuant to ADA or FMLA and instead infringed on Plaintiff's rights.

544.     By reason of the foregoing, defendants are liable in an amount in excess of $75,000.00, plus interest, attorneys' fees, and costs.

### TENTH CAUSE OF ACTION
### (Sexual Harassment)

545.     Plaintiff herein adopts and incorporates by reference all allegations set forth in paragraphs "1" through "544" as originally pled herein.

546.     Plaintiff is a victim of sexual harassment in the workplace, a form of sex discrimination that violates Title VII of the Civil Rights Act of 1964 and California's Fair Employment and Housing Act.

547.     Sexual harassment refers to unwelcome sexual advances, or other visual, verbal, or physical conduct of a sexual nature and actions that create an intimidating, hostile, or offensive work environment based on an employee's sex.

548.     Under California Law, the offensive conduct need not be motivated by sexual desire but may be based upon an employee's actual or perceived sex or gender-identity, actual or perceived sexual orientation, and/or pregnancy, childbirth, or related medical conditions.

549.     This definition includes many forms of offensive behavior and includes gender-based harassment of a person of the same sex as the harasser, and actions that subject co-workers to a hostile work environment.

550.     Vick sent Plaintiff (and other male employees) a sexually explicit text message that included sexual innuendos and context that is discriminatory and constitutes sexual harassment according to California Law.

551.     The communications from Vick contained a photo of a soiled condom with an accusatory tone suggestive that Plaintiff violated her.

552.     Given the climate of Me Too in Hollywood and the numerous accusations from women regarding improprieties of men and rapacious behavior the communications from Vick to Plaintiff deserved immediate follow-up and attention form Management and Human Resources at Chateau Marmont.

553.    America has an unsettling racially divided past and history of black men being convicted for rapacious behavior and/or innuendos with white women absent due process and the presumed notion of innocence until proven guilty because of systemic racism and oppression.

554.    Plaintiff fell victim to the presumption of guilt by Management and Human Resources at Chateau Marmont and was thus denied a fair and equitable investigation to determine if any wrongdoings had taken place.

555.    Vick being given the preferential treatment of experiencing in-person meetings, follow-up with Management and Human Resources, a parking spot, and platform to address Plaintiff, her alleged perpetrator, supports this claim.

556.    Vick sent Plaintiff a sexually explicit and vile communication, but Plaintiff was brandished a bully at Chateau Marmont and publicly vilified among guests and staff as such.

557.    Plaintiff did not violate Vick in any manner personally and/or professionally.

558.    Plaintiff did not engage in a romantic relationship with Vick or at-risk behaviors that could be potentially be misconstrued as relationship oriented or sexual in nature.

559.    The sexually explicit text communications in addition to other misconduct from Vick contributed to creating a hostile work environment and no disciplinary actions were taken by Management to remedy it despite them being aware of her misconduct.

560.    The communications sent from Vick to Plaintiff would have incited immediate termination leading up to criminal charges of Plaintiff if the same communications were sent from Plaintiff to Vick.

561.    Vick's communications were in clear violation of Chateau Marmont's Harassment Policy, training all employees receive and agree to as a term for employment.

562.    Therefore, Vick was aware of the severity of her actions and still elected to send the risqué communications.

563.    Management did not follow Harassment Policy Protocol with respect to discipline Vick and failed to acknowledge the message and/or discipline her at all.

564.    Plaintiff is a victim of sexual harassment from Vick and was forced to endure further bullying and innuendos from her, the individual who assaulted him.

565.    Chateau Marmont Management and Human Resources were complicit and allowed the demoralizing claims, assault, bullying, and sexual assault to persist.

566.    By reason of the foregoing, defendants are liable in an amount in excess of $75,000.00, plus interest, attorneys' fees, and costs.

## ELEVENTH CAUSE OF ACTION
### (Disability Discrimination)

567.    Plaintiff herein adopts and incorporates by reference all allegations set forth in paragraphs "1" through "566" as originally pled herein.

568.    Plaintiff is the victim of disability discrimination from Chateau Marmont et al.

569.    Chateau Marmont filed an unlawful Workers Compensation Claim on behalf on Plaintiff in violation of the American with Disabilities Act (ADA).

570.    Upon learning of the filing thirty-one days after it was submitted to Chateau Marmont's Insurer Sompo International, Plaintiff learned the filing was completed by Skinner and Newman after submission of a physician's note to excuse an absence.

571.    Disability discrimination occurs when an employer or other entity covered by ADA, as amended, or the Rehabilitation Act, as amended, treats a qualified individual with a disability who is an employee or applicant unfavorably because he or she has a disability.

572.    Disability Discrimination means treating individuals differently in employment because of their disability, perceived disability, or association with a disabled person. Whether a person's disability is visible or not, treating that person differently, or denying certain accommodations can be against the law.

573.    An individual with a disability is defined by ADA as a person who has a physical or mental impairment that substantially limits one or more major life activities, a person who has a history or record of such impairment, or a person who is perceived by others as having such impairment.

574.    Plaintiff provided a physician's note to Severse, a Chateau Marmont Manager, to excuse an absence and for no other purpose.

575.    Plaintiff's note was not submitted to be used as a health disclosure by Management at Chateau Marmont.

576.    However, Skinner and Newman used it absent Plaintiff's authorization and consent to file a fraudulent Workers Compensation Claim and reported false information such as a diagnosis, a form of insurance fraud.

577.    Several disclosure made on the employer-initiated filing were untrue, unauthorized, unlawful, egregious, and the incident date was reported as a date Plaintiff was not at work.

578.    Plaintiff's tenure at Chateau Marmont was also embellished on the employer-initiated filing.

579.    Plaintiff's Physician's note cited him as having "acute stress disorder from work related activity".

580.    However, the employer initiated filing cited Plaintiff as having "acute stress disorder" a diagnosis Chateau Marmont nor any of its agents were authorized or qualified to designate.

581.    The employer-initiated filing included a copy of a Physician's note submitted by Plaintiff absent Plaintiff's informed consent and/or authorization.

582.    Plaintiff submitted a Physician's note to excuse a single preapproved day of work and did not miss the number of workdays required to constitute an attendance violation or suggest a health issue.

583.    Plaintiff's medical disclosure fell within the parameters of disabilities covered by ADA.

584.    According to ADA, an individual with a disability is a person who has a physical or mental impairment that substantially limits one or more major life activities, has a record of such impairment, or is regarded as having such impairment.

585.    Thus, upon receipt of Plaintiff's Physician's note Management should have maintained the document with confidentiality and awaited a potential request from Plaintiff requesting a reasonable accommodation if desired.

586.    However, Plaintiff was not afforded the protection of ADA because Management and Human Resources unlawfully attributed his diagnosis to work despite the Physician's note suggesting otherwise.

587.    Chateau Marmont Management and Human Resources learned of Plaintiff's medical condition and filed a Workers Compensation Claim absent a work incident taking place to warrant it.

588.   Plaintiff is a victim of disability discrimination because Chateau Marmont filed a claim while failing to acknowledge Plaintiff's grievance, the related incident with Vick, and to make reasonable any accommodation to Plaintiff as stipulated by California Law and ADA.

589.   Plaintiff is a victim of disability discrimination because Plaintiff did not inform Chateau Marmont of a disability through a proper channel to address a reasonable accommodation.

590.   Plaintiff was denied the ability to communicate with Management and Human Resources about any subject matter and was thus unable to have the platform to make a health disclosure if desired.

591.   Plaintiff is a victim of disability discrimination because Newman and Skinner used a physician's note submission to excuse an absence as motivation to file a Workers Compensation Claim based on a health disclosure versus Plaintiff exhibiting difficulty fulfilling the requirements of his professional obligations and duties as prescribed in his job description.

592.   Plaintiff is a victim of disability discrimination because Chateau Marmont filed a Workers Compensation Claim based on a physician's note to excuse an absence but did not follow the same protocol in instances where other employees submitted a doctor's note to excuse an absence.

593.   If the protocol at Chateau Marmont is for Human Resources and Management to initiate employer filed Workers Compensation Claims when employees submit physician's notes, then there should be a number of filings to demonstrate it is the protocol and Plaintiff was not subjected to discrimination on the basis of disability.

594.   By reason of the foregoing, defendants are liable in an amount in excess of $75,000.00, plus interest, attorneys' fees, and costs.

## TWELFTH CAUSE OF ACTION
### (Bullying and Workplace Harassment)

595.    Plaintiff herein adopts and incorporates by reference all allegations set forth in paragraphs "1" through "526" as originally pled herein.

596.    Plaintiff is a victim of workplace bullying, harassment, and intimation from Chateau Marmont Management, Human Resources, and Vick.

597.    A hostile work environment can severely diminish an employee's productivity and self-esteem both in and out of the workplace.

598.    According to California Gov. Code § 12940 subd (j), unlawful workplace harassment occurs when a person directs negative, inappropriate, or unwanted conduct at a worker based on certain protected characteristics.

599.    Those can include the employee's race, disability, religion, sex, gender identity, marital status, sexual orientation, or pregnancy among other reasons.

600.    California's Fair Employment and Housing Council (FEHC) enacted regulations in 2016 to clarify the obligation to prevent and correct wrongful behavior.

601.    An effective remedy program for employers to deal with harassment in the workplace includes specialized training for complaint handlers, policies, and procedures for responding to and investigating complaints, prompt, thorough and fair investigations of complaints, and prompt and fair remedial action.

602.    Chateau Marmont did not institute corrective measures to address workplace harassment, trainings for complaint handlers, policies, and procedures for responding to and investigating complaints, prompt, thorough and fair investigations of complaints, or prompt and fair remedial action.

603.    Chateau Marmont ignored Plaintiff and instead indulged Vick and accommodated her requests.

604.    Plaintiff was forced to endure mistreatment in the form of harassment, bullying, intimidation and more from Vick, Management, and Human Resources from October 2019 to present.

605.    By reason of the foregoing, defendants are liable in an amount in excess of $75,000.00, plus interest, attorneys' fees, and costs.

## THIRTEENTH CAUSE OF ACTION
### (Retaliation (Govt. C. §12653; Lab. C. §1102.5)

606.    Plaintiff herein adopts and incorporates by reference all allegations set forth in paragraphs "1" through "536" as originally pled herein.

607.    Plaintiff is a victim of workplace retaliation from Management, Human Resources, and Vick, all agents of Chateau Marmont.

608.    Retaliation is a type of illegal discrimination that occurs when an employer takes adverse action against an employee for participating in a protected activity.

609.    Plaintiff's submission of a physician's note to Management at Chateau Marmont is a protected activity according to ADA and did not warrant the interference it incited.

610.    Plaintiff took off from work with preapproval from his immediate supervisor Severse.

611.    Plaintiff submitted a Physician's note with a mental health disclosure to excuses the approved absence and is a part of a protected class that falls under ADA.

612.    A month or more later, Plaintiff learned Chateau Marmont Management and Human Resources submitted a retaliatory filing to Workers Compensation and used Plaintiff's Physician's note absent authorization and in violation of California Law.

613.    Chateau Marmont's employer-initiated filing was in retaliation of Plaintiff taking time off from work and vocalizing grievances against Vick and subsequently with Management and Human Resources for failing to acknowledge his grievance and/or take corrective disciplinary actions with Vick.

614.    Management and Human Resources intentionally failed to inform Plaintiff regarding the employer-initiated Workers Compensation filing to create a paper trail and start a mental health file to demonstrate a false condition with Plaintiff, further tarnish his reputation, and punish him for vocalizing discontent with their unlawful actions.

615.    Management and Human Resources failure to disclose the employer-initiated Workers Compensation Claim filing is in violation of California Workers Compensation Law that requires employers to provide a copy of the completed claim form to the employee within one day of filing.

616.    After Plaintiff learned of the unauthorized filing and voiced concern about it being a violation of his rights, Chateau Marmont Management and Human Resources began to further retaliate against Plaintiff by tactically punishing him in ways that aligned with policy and procedure.

617.    The first tactic was by alleging Plaintiff was in violation of the attendance policy by requesting vacation time during a mandatory black-out period.

618.    Severse informed Plaintiff he was advised to write him up for his preapproved vacation request and to take further action against Plaintiff once he went on vacation despite the time request being approved during the same "black-out period" for other Chateau Marmont Personnel.

619.    Plaintiff cancelled his vacation to work his regularly scheduled shifts and was unable to resume his work schedule because the days were covered by other employees. So, Plaintiff was bullied into cancelling an approved vacation and was still unable to work.

620.    Plaintiff used vacation time to compensate for the loss of wages due to him not being able to resume his work schedule after cancelling the preapproved vacation.

621.    Given Plaintiff cancelled his approved vacation time at the direction of Management and made himself available to work the shifts that were suggested as mandatory Management's failure to make the shifts available to him was retaliatory.

622.    Management and Human Resources log of a fabricated mental health incident with Plaintiff on an off day was retaliation done to corrupt Plaintiff's blemish free employee file and record at Chateau Marmont as well as with the United States Government (OSHA).

623.    Plaintiff had no knowledge an incident report was filed citing him as having an at-work psychic incident and was unaware the fraudulent occurrence was reported to OSHA.

624.    Chateau Marmont filed the unlawful insurance claim to suggest there was something wrong with Plaintiff that adversely affected his work performance. This claim is substantiated by Skinner's request for Plaintiff to have a mental evaluation from Chateau Marmont Physician's on October 1st, 2019.

625.    Skinner unlawfully requested and suggested Plaintiff needed a mental evaluation to return to work despite Plaintiff not missing any additional workdays, the number of missed workdays required to constitute a workplace attendance violation, or issues with his work performance.

626.    These actions from Management were clear cut breaches of workplace trust, policy, and were retaliatory.

627.    By reason of the foregoing, defendants are liable in an amount in excess of $75,000.00, plus interest, attorneys' fees, and costs.

## FOURTEENTH CAUSE OF ACTION
### (Employer Negligence)

628.    Plaintiff herein adopts and incorporates by reference all allegations set forth in paragraphs "1" through "627" as originally pled herein.

629.    Plaintiff is a victim of employer negligence.

630.    California law makes an employer liable for an employee's negligence, recklessness, or intentional wrongful acts when the employer knew or should have known that the employee was a risk to others. This law is known as California's law on negligent hiring, supervision, or retention of an employee.

631.    In California, an employer is vicariously liable for the negligent and wrongful acts of his employees that are committed within the scope of employment.

632.    Thus, even if the employer did nothing wrong and was not negligent itself, if the employee was negligent or acting wrongful and a party is injured, the employer is liable.

633.    California Civil Code Section 2338; ("Unless required by or under the authority of law to employ that particular agent, a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business, and for his willful omission to fulfill the obligations of the principal.")

634.    Vick admitted to wrong doings and engaged in behaviors that violated company policy and the employee code of conduct that should have resulted in disciplinary actions from Human Resources and Management, but none were taken.

635.     Management instead deferred the responsibility of discipline for Vick to Plaintiff and took no further action, an act of gross misconduct and negligence.

636.     The California Law, The Fair Employment and Housing Act (FEHA), prohibits discrimination, harassment and retaliation and requires that employers "take reasonable steps to prevent and correct wrongful (harassing, discriminatory, retaliatory) behavior in the workplace (Cal. Govt. Code §12940(k)).[2]

637.     Vick's text communications, in addition to other misconduct, contributed to creating a hostile work environment and no disciplinary actions were taken by Management and Human Resources to remedy it despite them being aware of her misconduct.

638.     By reason of the foregoing, defendants are liable in an amount in excess of $75,000.00, plus interest, attorneys' fees, and costs.

## FIFTEENTH CAUSE OF ACTION
### (Breach Of Contract All Defendants)

639.     Plaintiff herein adopts and incorporates by reference all allegations set forth in paragraphs "1" through "638" as originally pled herein.

640.     Plaintiff is a victim of employer breach of contract.

641.     A breach of an employment agreement occurs when either party involved fails to perform their duties as determined by the contract terms.

642.      Management and Human Resources at Chateau Marmont failed to uphold the tenants of their professional work responsibilities, employment terms and conditions with respect to employee supervision, disciplinary actions, and practices established in the widely circulated employee handbook and manual.

---

[2] *California Workplace Harassment Guide: https://www.dfeh.ca.gov/wp-content/uploads/sites/32/2017/06/DFEH-Workplace-Harassment-Guide.pdf*

643.     They also breached professional responsibility by failing to enforce a mandated reporting policy and corrective action policy for workplace harassment once it was alleged by Plaintiff.

644.     Management and Human Resources breached Plaintiff's trust, committed insurance fraud, and breached their professional agreements as designated oversight personnel at Chateau Marmont by failing to remedy workplace incidents and/or institute required corrective procedures.

645.     By reason of the foregoing, defendants are liable in an amount in excess of $75,000.00, plus interest, attorneys' fees, and costs.

## SIXTEENTH CAUSE OF ACTION
### (Quantum Merit/Unjust Enrichment against all Defendants)

646.     Plaintiff herein adopts and incorporates by reference all allegations set forth in paragraphs "1" through "645" as originally pled herein.

647.     By reason of the foregoing, Defendants are liable in the amount in excess of $75,000.00 to be determined by a jury, plus interest/attorneys' fees and costs.

648.     The Defendant's failed to compensate, Adrian Jules, for the services he rendered for the last two weeks that he was employed by the Defendant.

649.     By reason of the foregoing, defendants are liable in an amount to be determined by the jury, plus interest, attorneys' fees, and costs.

## Prayer For Relief

**WHEREFORE**, Adrian Jules, requests judgment as follows:

A.      On Count One, awarding damages in favor of Adrian Jules, in an amount to be determined at trial, but in no event less than $75,000.00, plus interest, attorneys' fees and costs.

B.      On Count Two, awarding damages in favor of Adrian Jules, in an amount to be determined at trial, but in no event less than $75,000.00, plus interest, attorneys' fees and costs.

C.      On Count Three, awarding damages in favor of Adrian Jules, in an amount to be determined at trial, but in no event less than $75,000.00, plus interest, attorneys' fees and costs.

D.      On Count Four, awarding damages in favor of Adrian Jules, in an amount to be determined at trial, but in no event less than $75,000.00, plus interest, attorneys' fees and costs.

E.      On Count Five, awarding damages in favor of Adrian Jules, in an amount to be determined at trial, but in no event less than $75,000.00, plus interest, attorneys' fees and costs.

F.      On Count Seven, awarding damages in favor of Adrian Jules, in an amount to be determined at trial, but in no event less than $75,000.00, plus interest, attorneys' fees and costs.

G.      On Count Eight, awarding damages in favor of Adrian Jules, in an amount to be determined at trial, but in no event less than $75,000.00, plus interest, attorneys' fees and costs.

H.      On Count Nine, awarding damages in favor of Adrian Jules, in an amount to be determined at trial, but in no event less than $75,000.00, plus interest, attorneys' fees and costs.

I.      On Count Ten, awarding damages in favor of Adrian Jules, in an amount to be determined at trial, but in no event less than $75,000.00, plus interest, attorneys' fees and costs.

J.      On Count Eleven, awarding damages in favor of Adrian Jules, in an amount to be determined at trial, but in no event less than $75,000.00, plus interest, attorneys' fees and costs.

K.      On Count Twelve, awarding damages in favor of Adrian Jules, in an amount to be determined at trial, but in no event less than $75,000.00, plus interest, attorneys' fees and costs.

L.      On Count Thirteen, awarding damages in favor of Adrian Jules, in an amount to be determined at trial, but in no event less than $75,000.00, plus interest, attorneys' fees and costs.

M.      On Count Fourteen, awarding damages in favor of Adrian Jules, in an amount to be determined at trial, but in no event less than $75,000.00, plus interest, attorneys' fees and costs.

N.      On Count Fifteen, awarding damages in favor of Adrian Jules, in an amount to be determined at trial, but in no event less than $75,000.00, plus interest, attorneys' fees and costs.

O.      On Count Sixteen, awarding damages in favor of Adrian Jules, in an amount to be determined at trial, plus interest, attorneys' fees and costs.

P.      Granting Adrian Jules such other and further relief as the Court deems just and proper.


Dated: December 11, 2020
       New York, New York

                              Respectfully submitted,

                              /s/ Thomas A. Farinella
                        By:   Thomas A. Farinella, Esq.
                              Attorney for *Plaintiff*
                              260 Madison Avenue, 8th Floor
                              New York, New York 10016
                              Telephone: (917) 319-8579
                              Facsimile: (646) 349-3209
                              Email: TF@LAWTAF.COM