UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                     :
ADRIAN JULES,                              :
                                Plaintiffs,   :
                                                   :            20 Civ. 10500 (LGS)
                   -against-                    :
                                                   :            <u>OPINION & ORDER</u>
ANDRE BALAZS PROPERTIES et al.,     :
                                                   :
                                       Defendants. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

       Defendants Andre Tomas Balazs, Andre Balazs Properties, Balazs Investors LLC and HotelsAB, LLC, move to (1) compel arbitration of Plaintiff's claims in California or (2) stay this action pending such arbitration. For the reasons stated below, this action is stayed pending any arbitration of Plaintiff's claims in California.

**I.     BACKGROUND**

       The following facts are taken from the Complaint, the parties' memoranda of law regarding Defendants' motion to compel arbitration and other submissions. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

       Plaintiff worked at the Chateau Marmont Hotel ("Chateau Marmont") in Los Angeles, California, from May 2017 to March 2020, when the hotel ended his employment, citing staffing issues related to the COVID-19 pandemic. On October 5, 2020, Plaintiff filed a charge of employment discrimination and retaliation with the Equal Opportunity Employment Commission ("EEOC"). That charge was against Chateau Holdings, Ltd. a/k/a the Chateau Marmont hotel. The EEOC issued a right to sue letter on October 13, 2020. Plaintiff filed this action on December 11, 2020, asserting sixteen causes of action under (1) federal and California statutes

and (2) California common law.  Plaintiff did not assert claims against Chateau Holdings, Ltd. or Chateau Property Holdings, LLC.

Defendant Andre Balazs holds ownership interests in companies that own Chateau Property Holdings, LLC -- which is itself owned at least in part by Chateau Holdings, Ltd. Defendant HotelsAB, LLC is the management company for some hotels owned by Mr. Balazs, but not the Chateau Marmont.  Defendant Andre Balazs Properties is the d/b/a name for HotelsAB, LLC.  Defendant Balazs Investors LLC is the parent company of HotelsAB, LLC.

Before starting work at the Chateau Marmont, Plaintiff signed an arbitration agreement with Chateau Holdings, Ltd. (the "Arbitration Agreement") containing the following clauses:

> I hereby agree that any claims, disputes or controversies arising between me and Chateau Holdings, Ltd. [the "Company"], which could give rise to a legal claim relating to my employment with the Company or the termination thereof, including the interpretation or application of this Dispute Resolution Procedure and Mutual Binding Arbitration Agreement ["Agreement"], shall be addressed in the following manner:
>
> First, through good faith negotiation between me and the Company. Second, at the Company's option, through mediation administered by a mediator approved by me and the Company and paid for by the Company. And third, if still not resolved, by binding arbitration under the Federal Arbitration Act . . . .
>
> This Agreement applies, without limitation, to claims regarding the employment relationship, trade secrets, unfair competition, compensation, breach of any express or implied contract, fraud, defamation, detrimental reliance, termination, harassment, discrimination, or retaliation (including harassment, discrimination, and retaliation claims based on gender, race, national origin, religion, marital status, age, medical condition, disability, sexual orientation, or any other characteristic protected by law), and claims arising under the Defense of Trade Secrets Ac[t], Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act, the Fair Employment and Housing Act, the California Labor Code and other applicable federal laws and regulations and state laws and regulations, if any, addressing the same or similar subject matters, and all other state statutory and common law claims.
>
> I understand and agree that the arbitration will take place in Los Angeles County .
> . . .

Defendants move to compel arbitration in Los Angeles or, alternatively, for a stay of this action pending any arbitration in that venue.

## II.   STANDARD

The Federal Arbitration Act ("FAA") embodies a national policy favoring enforcement of arbitration agreements based on the desire to preserve the parties' ability to arbitrate, not litigate, their disputes. *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 395 (2d Cir. 2015); *accord Coscarelli v. ESquared Hosp. LLC*, 364 F. Supp. 3d 207, 215 (S.D.N.Y. 2019).

"[T]he FAA creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act," but "in evaluating whether the parties have entered into a valid arbitration agreement, the court must look to state law principles." *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003). "As a result, prior to compelling arbitration, the district court must first determine two threshold issues that are governed by state rather than federal law: (1) Did the parties enter into a contractually valid arbitration agreement? and (2) If so, does the parties' dispute fall within the scope of the arbitration agreement?" *Cap Gemini*, 346 F.3d at 365 (2d Cir. 2003); *accord Coscarelli*, 364 F. Supp. 3d at 215. The Court must then evaluate two additional issues: (3) whether Congress intended any federal statutory claims to be non-arbitrable and (4) if some, but not all, of the claims are arbitrable, whether to stay the balance of the proceedings pending arbitration. *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 221-22 (2d Cir. 2019).

Court proceedings must be stayed once the district court is "satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding."

*Amazon.com, Inc.*, 834 F.3d at 229.  In deciding this issue, courts apply a "standard similar to that applicable for a motion for summary judgment." *Id*.  Courts must "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits," and must "draw all reasonable inferences in favor of the non-moving party." *Id.*

### III. DISCUSSION

#### A. Agreement to Arbitrate Claims at Issue

State law governs whether (1) the parties entered into a valid arbitration agreement that (2) covers the claims at issue.  *Cap Gemini*, 346 F.3d at 365.  The parties' memoranda of law assume that California law determines these questions, and "such implied consent . . . is sufficient to establish choice of law." *Chau v. Lewis*, 771 F.3d 118, 126 (2d Cir. 2014) (internal quotation marks omitted); *accord Breaking Media, Inc. v. Evan Jowers*, No. 21 Misc. 194, 2021 WL 1299108, at *3 (S.D.N.Y. Apr. 7, 2021).

##### 1. Agreement to Arbitrate

Under California law, a court construing an arbitration agreement must focus on the parties' "objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties," *DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1152 (9th Cir. 2021) (quoting *Reilly v. Inquest Tech., Inc.*, 218 Cal. App. 4th 536, 544 (2013)), so long as the "contract language is clear and explicit and does not lead to absurd results," *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 717 (9th Cir. 2020) (quoting *Kashmiri v. Regents of Univ. of California*, 156 Cal. App. 4th 809, 831 (2007), *as modified* (Nov. 15, 2007), *as modified* (Nov. 28, 2007)).  When in doubt, "both federal and state law point to interpreting [an agreement] to

4

permit arbitration." *DiCarlo*, 988 F.3d at 1152. (alteration in original) (citing Cal. Civ. Code § 1643; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

Here, the Arbitration Agreement states, "[Plaintiff] hereby agree[s] that any claims, disputes or controversies arising between me and Chateau Holdings, Ltd. [the 'Company'], which could give rise to a legal claim relating to my employment with the Company or the termination thereof . . . *shall* be addressed," *inter alia*, "by binding arbitration under the Federal Arbitration Act." (emphasis added).[1] This language explicitly and unambiguously reflects the parties' intent to arbitrate under the FAA all disputes arising from Plaintiff's employment.

### a. The Arbitration Agreement's Missing Signature

In response, Plaintiff first claims the Arbitration Agreement is invalid because, although he signed it, Chateau Holdings, Ltd. did not. "[T]he writing memorializing an arbitration agreement need not be signed by both parties in order to be upheld as a binding arbitration agreement" because "it is not the presence or absence of a signature [on an agreement] which is dispositive; it is the presence or absence of evidence of an agreement to arbitrate which matters." *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 176 (2015) (internal quotation marks omitted) (emphasis removed); *see also Batory v. Sears, Roebuck & Co.*, 124 F. App'x 530, 533 (9th Cir. 2005) (summary order) ("the Ninth Circuit clearly has recognized that '[w]hile the FAA requires a writing, it does not require that the writing be signed by the parties'" (quoting *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1439 (9th Cir. 1994)) (internal quotation marks omitted). Factors confirming an employer's intent to be bound by an unsigned arbitration agreement include the employer's preparation of the agreement and its filing of a motion to stay

---

[1] The Arbitration Agreement contains two conditions to arbitration which neither party disputes were met: negotiation between Plaintiff and the Chateau Holdings, Ltd. and mediation at Chateau Holdings, Ltd.'s option.

litigation and compel arbitration. *See Serafin*, 235 Cal. App. 4th at 176-77. Chateau Marmont, Ltd. prepared the Arbitration Agreement and affiliated Defendant Andre Balazs has moved to compel arbitration. The evidence shows that Chateau Marmont, Ltd. intended to be bound by the Arbitration Agreement.

### b. Unconscionability

Plaintiff also claims that the Arbitration Agreement is invalid because it is unconscionable under California law. Unconscionability has both a "procedural" and a "substantive" element, the former focusing on oppression or surprise due to unequal bargaining power and the latter on overly harsh or one-sided results that "shock the conscience." *De La Torre v. CashCall, Inc.*, 5 Cal. 5th 966, 982 (2018). Although both procedural and substantive unconscionability must be established, these factors are evaluated on a sliding scale -- a high degree of substantive unfairness may offset a low degree of procedural unfairness, and vice versa. *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125-26, *cert. denied sub nom. OTO, L.L.C. v. Ken Kho*, 141 S. Ct. 85 (2020). "[T]he ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *Id.* (internal quotation marks omitted).

The Arbitration Agreement is not procedurally unconscionable. California courts have typically found arbitration agreements procedurally unconscionable if they (1) are contracts of adhesion offered on a take-it-or-leave-it basis, (2) involve a lack of negotiation or meaningful choice or (3) bury the allegedly unconscionable provision on a prolix printed form. *Id.* (collecting cases). The Arbitration Agreement (1) states that Plaintiff could opt out of the mandatory arbitration provisions within 30 days of receipt and that he would not be penalized for doing so, (2) states that if he did opt out, a manager would contact him to discuss his concerns

and (3) prominently displays the relevant arbitration provisions on the first and second pages. California courts facing similar arbitration agreements have declined to find them procedurally unconscionable. *See, e.g.*, *Sanchez v. Carmax Auto Superstores Cal., LLC*, 224 Cal. App. 4th 398, 403 (2014); *Daniels v. Securitas Sec. Servs. USA, Inc.*, No. 18 Civ. 265, 2019 WL 4187383, at *4 (C.D. Cal. Apr. 5, 2019). Plaintiff also claims that he was not provided certain materials specifying employee conduct and the standardized procedures that would be used in arbitration. This argument is unpersuasive because Plaintiff provides only attorney argument, which does not explain how any lack of access to those materials rendered the negotiation process so one-sided that it was procedurally unconscionable.

Nor is the Arbitration Agreement substantively unconscionable. In *Armendariz v. Found. Health Psychcare Servs., Inc.*, the California Supreme Court laid out factors to determine substantive unconscionability: whether (1) only one party is required to arbitrate; (2) recovery is limited for only one party; (3) the agreement permits adequate discovery; and (4) the agreement requires a neutral arbitrator and written decision. 24 Cal. 4th 83, 85, 99, 126 (2000); *accord Daniels*, 2019 WL 4187383, at *4. The Arbitration Agreement contains bilateral obligations to arbitrate before a neutral arbitrator, does not limit recovery, permits discovery as permitted by the neutral arbitrator and requires a written decision explaining any award. The Arbitration Agreement's terms cannot be said to shock the conscience sufficient to find substantive unconscionability. *See De La Torre*, 5 Cal. 5th at 982 (2018).

Although Plaintiff claims, solely by attorney argument, that the Chateau Marmont conditioned his employment on execution of the Arbitration Agreement, any such conditioning would not invalidate the Arbitration Agreement, which permitted him to opt out without penalty. *See Daniels*, 2019 WL 4187373, at *4 ("Pursuant to *Armdendariz*, even if [defendant] told

7

Plaintiff that she had to sign the [arbitration agreement] as a condition of employment, that alone is not enough to make the agreement unconscionable" where the plaintiff could opt out).

Plaintiff also claims that a provision of the Arbitration Agreement requiring him to (1) pay his own attorneys' fees unless fee-shifting was permitted by statute and (2) contribute to arbitration fees up to the amount he would have spent litigating in court is unconscionable. Similar provisions are routinely upheld by courts applying California law. *See, e.g.*, *Armendariz*, 24 Cal. 4th at 90 (permitting arbitration agreements that require employee to bear costs of the type that would be incurred in court); *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1026 (9th Cir. 2016) (holding valid arbitration agreements that did not impose unaffordable fees that would thwart a party's ability to arbitrate).

### c. Plaintiff's Remaining Arguments

Plaintiff also claims that the Arbitration Agreement is invalidated by California Labor Code § 432.6, which prohibits any employment agreement requiring employees to waive the protections of the California Fair Housing and Employment Act. This argument is unpersuasive because that provision (1) does not invalidate arbitration agreements otherwise enforceable under the FAA, Cal. Lab. Code § 432.6(f) and (2) applies only to employment contracts entered into, modified or extended on or after January 1, 2020 -- several years after the Arbitration Agreement's execution. Cal. Lab. Code § 432.6(h). Plaintiff also claims that employment-related disputes cannot be sent to arbitration under the Civil Rights Act of 1991. This argument fails because Plaintiff relies on overturned precedent. *See Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182, 1190 (9th Cir. 1998), *overruled by EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742 (9th Cir. 2003) ("In *Duffield*, we held that for Title VII claims, the 1991 Act

8

precludes enforcement of arbitration agreements entered into as a condition of employment. . . . On reconsideration en banc, we now conclude that our holding in Duffield was in error").

### 2. Applicability of Arbitration Agreement to Plaintiff's Claims

Courts presumptively decide the question of whether an arbitration agreement applies to a particular dispute. *Doctor's Assocs., Inc.*, 934 F.3d at 250-51. This presumption may be overcome where the parties "clearly and unmistakably" agree that the arbitrator should resolve the agreement's scope. *Id.* (internal quotation marks omitted). Because an arbitration agreement rarely "directly state[s] whether the arbitrator or the court will decide the issue of arbitrability," courts may infer the parties' intent from other provisions of the agreement. *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir.), *cert. denied*, 140 S. Ct. 256 (2019). "Broad language expressing an intention to arbitrate all aspects of all disputes supports the inference of an intention to arbitrate arbitrability, and the clearer it is from the agreement that the parties intended to arbitrate the particular dispute presented, the more logical and likely the inference that they intended to arbitrate the arbitrability of the dispute." *Id.* (collecting cases).

The Arbitration Agreement broadly provides that it applies to:

- "any claims, disputes or controversies arising between [Plaintiff] Chateau Holdings, Ltd. [the 'Company'] which could give rise to a legal claim relating to [Plaintiff's] employment with the Company or the termination thereof";

- "claims regarding the employment relationship, trade secrets, unfair competition, compensation, breach of any express or implied contract, fraud, defamation, detrimental reliance, termination, harassment, discrimination, or retaliation (including harassment, discrimination, and retaliation claims based on gender, race, national origin, religion, marital status, age, medical condition, disability, sexual orientation, or any other characteristic protected by law)";

- claims arising under various federal statutes; and

- "other applicable federal laws and regulations and state laws and regulations, if any, addressing the same or similar subject matters, and all other state statutory and common law claims."

9

The plain language of these provisions establishes that the parties intended to arbitrate all issues arising from Plaintiff's employment. *See Revitch*, 977 F.3d at 717 (contracts should be construed in accordance with their plain meaning under California law). The provisions' breadth also establishes that the parties intended the arbitrator to resolve whether Plaintiff's claims fall under the Arbitration Agreement.[2]

## B. Defendants' Interest in Compelling Arbitration

The Complaint alleges misconduct resulting from actions of the Chateau Marmont's employees. The counter-party to the Arbitration Agreement is Chateau Holdings, Ltd., which has an ownership interest Chateau Holdings, LLC. The Defendant with a related interest is Andre Balazs, who holds ownership interests in companies that hold interests in Chateau Property Holdings, LLC.

A signatory to an arbitration clause is estopped from refusing to arbitrate against a non-

---

[2] The Arbitration Agreement also encompasses each of the Complaint's claims. The Complaint asserts causes of action for employment discrimination under federal law (Count I); intentional infliction of emotional distress (Count II); a hostile work environment pursuant to federal and California law (Count III); invasion of privacy (Count IV); violations of due process (Count V); defamation (Count VI); workers' compensation violations under federal and California law (Count VII); federal insurance fraud (Count VIII); copyright infringement (Count IX); sexual harassment in violation of federal and California law (Count X); federal disability discrimination (Count XI); bullying and workplace harassment under California law (Count XII); retaliation under federal law (Count XIII); negligence (Count XIV); breach of contract (Count XV) and unjust enrichment (Count XVI). Each of these claims rests on activity allegedly taken by the Chateau Marmont or its employees in the scope of Plaintiff's employment, and such activities plainly fall within the Arbitration Agreement's expansive language. *See, e.g.*, *Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 49 (2d Cir. 2000) (finding an agreement to arbitrate "any controversy or claim between [the parties] arising out of or relating to" a contract to be "classically broad") (internal quotations omitted); *accord Lewis v. ANSYS, Inc.*, No. 19 Civ. 10427, 2021 WL 1199072, at *8 (S.D.N.Y. Mar. 30, 2021) (finding claims for discrimination, retaliation and defamation fell under agreement to arbitrate "any dispute or claim arising out of or in any way related to" the plaintiff's employment) (internal quotations omitted). The parties identify no federal statutory claims that are non-arbitrable.

signatory where (1) "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed" and (2) there is "a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute" with the non-signatory. *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010) (internal quotations omitted); *accord Doe v Trump Corp.*, 453 F. Supp. 3d 634, 640 (S.D.N.Y. 2020). "When assessing relationships between signatories and non-signatories to an arbitration agreement, the Second Circuit has noted that estoppel cases have tended to share a common feature in that the non-signatory party asserting estoppel has had some sort of corporate relationship to a signatory party; that is, [the Circuit] has applied estoppel in cases involving subsidiaries, affiliates, agents, and other related business entities." *Meridian Autonomous Inc. v. Coast Autonomous LLC*, No. 17 Civ. 5846, 2020 WL 496078, at *3 (S.D.N.Y. Jan. 30, 2020) (internal quotations omitted). The purpose of equitable estoppel is to avoid an unfair result: permitting a signatory to an arbitration agreement to evade arbitration by suing non-signatory defendants for claims that are based on the same facts and inherently inseparable from arbitrable claims. *See Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d Cir. 2008); *accord Meridian Autonomous*, 2020 WL 496078, at *2.

Here, the issues that the non-signatory Defendants seek to resolve in arbitration are identical to those subject to arbitration between Plaintiff and the Chateau Marmont, as both arise entirely from conduct subject to the Arbitration Agreement. There is also a degree of affiliation between Defendant Andre Balazs and the Chateau Marmont. And permitting Plaintiff to evade arbitration by filing claims against non-signatories to the Arbitration Agreement would create the unfair result that the doctrine of equitable estoppel is intended to prevent. Accordingly, Plaintiff

may not proceed on his claims in this proceeding until his claims are resolved in arbitration.

### C. Whether to Compel Arbitration

The FAA provides that any arbitration proceedings resulting from a motion to compel arbitration "shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. However, the Arbitration Agreement provides that any arbitration "will take place in Los Angeles County." Although the Second Circuit has not addressed this situation, courts in this district have persuasively reasoned that they should decline to compel arbitration in a venue not authorized by statute and stay proceedings pursuant to 9 U.S.C. § 3 while awaiting the outcome of any arbitration in the venue specified by the agreement. *See, e.g.*, *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, No. 18 Civ. 8152, 2021 WL 37691, at *6 (S.D.N.Y. Jan. 5, 2021); *L. Offs. of Joseph L. Manson III v. Keiko Aoki*, No. 19 Civ. 04392, 2020 WL 767466, at *4 (S.D.N.Y. Jan. 3, 2020) (collecting cases). Resolution of Plaintiff's claims against Defendants must await any resolution of those same claims in arbitration. For that reason, a stay is appropriate.

## IV. CONCLUSION

For the reasons given above, Defendants' motion to compel arbitration is **denied**. Defendants' motion to stay this case pending the completion of any arbitration in California is **granted**. All deadlines are **stayed** and all conferences are **adjourned** sine die. **Sixty days** after the date of this Opinion and order, and every **sixty days** thereafter, the parties shall file a joint letter apprising the Court of the status of any arbitration in California. The Clerk of Court is respectfully directed to close Docket Entry No. 17.

Dated: May 28, 2021
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE